# Illinois Official Reports

## Appellate Court

---

### *Douglas v. Arlington Park Racecourse, LLC*, 2018 IL App (1st) 162962

---

| | |
|---|---|
| Appellate Court Caption | RENE DOUGLAS and NATALIA DOUGLAS, Plaintiffs-Appellees, v. ARLINGTON PARK RACECOURSE, LLC, and CHURCHILL DOWNS, INC., Defendants-Appellants. |
| District & No. | First District, Fourth Division<br>Docket No.1-16-2962 |
| Filed | June 29, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 10-L-5518; the Hon. James M. McGing, Judge, presiding. |
| Judgment | Reversed and remanded with directions. |
| Counsel on Appeal | Barbara I. Michaelides, Paula M. Carstensen, and Mark J. Sobczak, of Nicolaides Fink Thorpe Michaelides Sullivan LLP, of Chicago, for appellants.<br><br>Thomas Siracusa, of Power Rodgers & Smith LLP, of Chicago, for appellees. |
| Panel | JUSTICE ELLIS delivered the judgment of the court, with opinion.<br>Presiding Justice Burke concurred in the judgment and opinion.<br>Justice Gordon dissented, with opinion. |

¶ 1     This appeal primarily revolves around a single question: is the sole proximate cause theory and jury instruction available in a negligence action if a defendant argues more than one nonparty actor was the sole proximate cause of plaintiff's injury?

¶ 2                                                                    I

¶ 3     Plaintiff Rene Douglas (Rene) was a professional jockey. In 2009, Rene was paralyzed from the chest down after falling from his horse during a race at Arlington Park racecourse (Arlington Park). He suffered a "traumatic flexion compression," which caused a burst fracture of his T5 vertebrae. This fracture caused an impingement or occlusion of the spinal cord, resulting in permanent paralysis. Rene and his wife sued Arlington Park Racecourse, LLC; Churchill Downs, Inc. (Churchill Downs); Martin Collins Surfaces and Footings, LLC (Martin Collins); and Keeneland Ventures, PT. LLC (Keeneland Ventures).

¶ 4     Arlington Park Racecourse, LLC, owns and operates Arlington Park. Churchill Downs owns Arlington Park Racecourse, LLC. Martin Collins is the developer and manufacturer of a synthetic horse racing surface known as Polytrack. Keeneland Ventures is a Polytrack distributor.

¶ 5     At the time of trial, the only remaining defendants were Arlington Park Racecourse, LLC, and Churchill Downs. Plaintiffs settled and dismissed their products liability claims against Martin Collins and Keeneland Ventures.

¶ 6     Arlington Park has a Polytrack surface. The track is maintained using a rototiller, a power harrow, and a Gallop Master. The rototiller and power harrow loosen and mix the track surface. The Gallop Master is used to create an even, uniform surface. The rototiller and power harrow are used as necessary, typically prior to race days. The Gallop Master is used between nearly every, if not every, race in order to even the racing surface.

¶ 7     The Polytrack's maintenance is managed by Arlington Park's track superintendent. Arlington Park's personnel were trained to maintain the Polytrack by Martin Collins, the manufacturer. The training consisted of visiting other racetracks with the Polytrack surface and having the opportunity to practice with the rototiller, power harrow, and Gallop Master. Martin Collins also provided a manual with recommendations and recommended equipment.

¶ 8     Plaintiffs did not blame Rene's fall on the track. Plaintiffs' theory at trial was that Rene's injury was caused by defendants' negligent maintenance of the Polytrack, which should have better protected a falling jockey. Plaintiffs' experts opined that Rene's injuries were caused because, after falling, Rene "pocketed" into the Polytrack due to an unsafe dynamic shear angle. "Dynamic shear angle" measures downward versus horizontal movement across a surface. Dynamic shear angles are measured in either degrees or radians. A low dynamic shear angle means that an object will slide across a surface at impact, whereas a high dynamic shear angle means that an object sticks, or "pockets," into the surface. For example, at a 90-degree angle (1.57 radians), the object will impart all of its force straight downward and there will be no horizontal movement. Dr. Kumar opined that the safe range for horserace tracks is 0.25-0.95 radians. He testified that an angle above 0.95 radians creates an unsafe risk because it imparts much more of the force of the collision into the impacting object instead of dissipating it.

¶ 9        According to plaintiffs' experts, at the time of Rene's injuries, Arlington Park's Polytrack had a dynamic shear angle of 1.2 to 1.3 radians, causing pocketing. This pocketing effect caused an increased load on Rene's T5 vertebrae, which resulted in its catastrophic failure and Rene's paralysis. Plaintiffs argued that defendants negligently failed to monitor and correct this unsafe dynamic shear angle and that this negligence was a proximate cause of Rene's injury.

¶ 10       Defendants, for their part, raised four arguments: (1) they were not negligent in maintaining the track because they followed the instructions in the Martin Collins manual about maintaining the Polytrack; (2) there was nothing wrong with the track and it did not cause Rene's injury; (3) if they were negligent, they were not liable because the actions of another jockey racing that day, Jaime Theriot, was the sole proximate cause of Rene's injury; and (4) if they were negligent in maintaining the track, it was the negligence of Martin Collins, in failing to apprise defendants about the proper maintenance of the track, that was the sole proximate cause of Rene's injury. (This fourth alleged argument is the subject of dispute; plaintiffs insist that defendants raised this argument, while defendants say they did not.)

¶ 11       As to their claim that the track did not cause Rene's injury, one of defendants' experts opined that the most important factor for a safe racing surface is consistency. According to this expert, the dynamic shear angle affects a horse's gait. A horse can adapt its gait to a high dynamic shear angle, but unlike a human, a horse cannot adapt its gait with each step. Instead, a horse alters its gait gradually, over a number of steps. Thus, a consistent track, even one with a high dynamic shear angle, is the primary safety concern because the horse will have adapted its gait to high dynamic shear angle without the need to adjust its gait while in stride.

¶ 12       Defendants' experts further testified that there is no measurable difference between the dynamic shear angle of a dirt track and the hard middle layer of Polytrack. According to expert testimony, Rene hit the Polytrack at about a 22-degree angle. This angle would have precluded a pocketing effect due to his forward momentum. Further, the injuries Rene sustained were not consistent with the pocketing phenomenon and were indicative of a high energy bending injury. Two of defendants' experts opined that there would have been no discernible difference in Rene's injury if the accident had occurred on dirt versus the Polytrack.

¶ 13       Regarding the conduct of the other jockey, Theriot, defendants' expert testified that Rene's accident was caused when the horse jockeyed by Theriot "clipped" Rene's horse during the race. Due to a horse's gait, when their front legs are extended forward, their back legs are extended backwards. "Clipping" occurs when a leading horse's back legs contact a trailing horse's front legs. The most common result is that the rear horse falls—which, according to defendants' expert, is what caused Rene's accident.

¶ 14       On the subject of the Martin Collins manual, defense witnesses repeatedly testified that the manual did not mention "dynamic shear angle" or "vertical load." At the time of Rene's accident, Ricardo Malagon was the track superintendent. Malagon had recently taken over from his mentor, Javier Barajas. Malagon testified that he was not aware of the terms "vertical load" and "dynamic shear angle." Barajas testified that he was familiar with the concepts but did not measure them, or conduct maintenance to control them, because the Martin Collins manual did not say it was necessary to do so.

¶ 15      At the jury instruction conference, defendants requested that the trial court give a sole proximate cause instruction. Plaintiffs objected. The trial court agreed with defendants and instructed the jury using the long form of Illinois Pattern Jury Instructions, Civil, No. 12.04 (approved Dec. 8, 2011) (hereinafter IPI Civil No. 12.04).

¶ 16      The long form of IPI Civil No. 12.04, given by the trial court, stated:

> "More than one person may be to blame for causing an injury. If you decide that the defendants were negligent and that their negligence was a proximate cause of injury to the plaintiffs, it is not a defense that some third person who is not a party to the suit may also have been to blame.
>
> However, if you decide that the sole proximate cause of injury to the plaintiff was the conduct of some other person other than the defendant, then your verdict should be for the defendant."

¶ 17      In addition to the sole proximate cause instruction embodied in the second paragraph of IPI Civil No. 12.04, the court allowed defendants to issue a special interrogatory, which asked: "On the date of the accident and at the time and place of the accident in question in this case was the conduct of some person other than the defendants the sole proximate cause of the plaintiffs' injuries? [Yes or No]."

¶ 18      The jury returned a verdict in favor of defendants and answered "yes" to the special interrogatory. Plaintiffs filed a posttrial motion arguing, in part, that the trial court erred in allowing the sole proximate cause issue to go before the jury—both in the form of the jury instruction on sole proximate cause and via the special interrogatory.

¶ 19      The trial court agreed with plaintiffs and granted a new trial. The trial court reasoned that the fact that defendants introduced evidence of *two* alternative proximate causes (the negligence of the jockey, Theriot, as well as the negligence of Martin Collins, the manufacturer of the Polytrack surface) precluded them from arguing that Theriot's conduct was the *sole* proximate cause of Rene's injuries. Further, the trial court found that the special interrogatory's reference to "some person other than defendants" was ambiguous. Instead, the trial court reasoned, the "special interrogatory should have been specific as to whose conduct the jury was to consider." Accordingly, the trial court held that the special interrogatory "was vague" and that, "coupled with the sole proximate cause instruction [it] was improper and should not have been given in the form as worded." The court concluded that "[t]he serious, prejudicial impact of the sole proximate cause instruction and special interrogatory denied the Plaintiffs a fair trial and warrants granting Plaintiffs a new trial."

¶ 20      This court allowed defendant's appeal pursuant to Illinois Supreme Court Rule 306(a)(1) (eff. Jan.1, 2016).

¶ 21                         II

¶ 22      Generally, the giving of an improper jury instruction is the basis for a new trial " 'only where the opposing party has suffered serious prejudice from the offending instruction.' " *Tabe v. Ausman*, 388 Ill. App. 3d 398, 405 (2009) (quoting *Thompson v. MCA Distributing, Music Corp. of America*, 257 Ill. App. 3d 988, 991 (1994)). A trial court's decision to order a new trial will not be reversed "unless the court obviously abused its discretion or clearly misunderstood the law." *Smith v. City of Evanston*, 260 Ill. App. 3d 925, 932 (1994). Here, the trial court's basis for granting a new trial was, in large part, its determination that the law

does not allow defendants to avail themselves of the sole proximate cause instruction when defendants are pointing blame at *multiple* nonparty tortfeasors. This appeal raises a question about whether the trial court properly applied Illinois law regarding the sole proximate cause theory.

A

As an initial matter, defendants challenge the premise of plaintiff's entire argument. They say that they did not point the finger at *two* alternative nonparty actors—the jockey, Theriot, and the turf manufacturer, Martin Collins—but rather only at one: Theriot. If they are correct, then the rest of the discussion is moot, for even plaintiff would agree that a sole proximate cause instruction is appropriate if defendants only tried to implicate *one* nonparty tortfeasor.

The trial court found that defendants implicated both Theriot and Martin Collins at trial. The court wrote that evidence of each nonparty's negligence was "imbued within [d]efendants' case." While we do not defer to a trial court's read of the law, we defer to its take on the evidence at trial and the reasonable inferences drawn from that evidence, and we will upset that determination only if the trial court abused its discretion. See *Smith*, 260 Ill. App. 3d at 932.

The trial court did not abuse its discretion in finding that defendants sought to blame both Theriot and Martin Collins for Rene's injuries. Throughout the trial, defendants elicited evidence that the Martin Collins manual did not contain instructions and recommendations about measuring and controlling the dynamic shear angle of the Polytrack; defendants conceded at oral argument before this court that they elicited this evidence.

During closing arguments, defense counsel made the following statements:

"if this dynamic angle and this vertical load is the big deal that they say it is and is the cause of Mr. Douglas's injuries, where did any of these experts see the word dynamic angle and vertical load by the product manufacturer.

* * *

He's going to tell you folks Arlington did something wrong, but the only way you maintain [the Polytrack] is with this equipment that Martin Collis has us buy.

So tell me which one of those equipments, you've looked at the maintenance records, you looked at the maintenance manual, he looked at the maintenance manual, put them together and tell us what about the machinery we did something wrong.

* * *

You buy a car, you get a manual. And the manual tells you how you're supposed to service your car. We buy this product, we get a manual. It tells us how to maintain this product. That's in evidence for you folks, by the way.

Tell us, did we not follow the manual? I don't know anything about what the manual says. That's their expert telling you folks we did something wrong.

Well, did we not follow the manual? I don't know. I don't know. And to this day we don't know. Because we did everything right."

Then there are the statements that defense counsel made to the court. During the cross-examination of plaintiffs' expert, defendants sought to introduce evidence about whether the expert criticized Polytrack as a product. Plaintiff objected. Defense counsel argued that this testimony was proper, in part, because "we have a right to have Martin

Collins be the sole proximate cause of the condition of this track, because they created the product. So the jury could decide, for example, it wasn't the maintenance of the Polytrack, because you weren't warned in any of the product documents." This statement clearly shows defendants intended to argue that Martin Collins's failure to include procedures to control the dynamic shear angle was the sole proximate cause of Rene's injury.

¶ 29 What's more, during the jury instruction conference, defense counsel argued that the long form of IPI Civil No. 12.04—that is, including the second paragraph, the sole proximate cause instruction—was appropriate "because we believe the evidence shows that Martin Collins could also be a sole proximate cause based upon the evidence that the plaintiff is contending the dynamic angle, the shear strength, the vertical loads on the Polytrack itself were the cause of this accident and our failure to maintain." In responding to the trial court's concern over whether defendants could implicate two different nonparties in their sole proximate cause theory, defense counsel argued:

> "I believe under the law for sole proximate cause you're not limited to one actor, if you will. The jury could determine that it was Theriot that was the sole proximate cause or under the facts in this case—the unique facts in this case the jury could determine it was also Martin Collins."

¶ 30 Defendants say that their arguments to the jury went solely to the question of whether they were negligent. They were not negligent, in other words, because they did everything the Martin Collins manual told them to do. They insist that such an argument is materially different than arguing that *Martin Collins was negligent* for not providing information about dynamic angle and vertical load in the manual—and not only negligent but the sole proximate cause of Rene's injuries. In other words, in defendants' view, it would not matter whether the Martin Collins manual should have contained this information—all that matters is that it did not, and thus defendants cannot be blamed for not knowing about these concepts of dynamic angle and vertical load.

¶ 31 There is not much daylight between arguing, on the one hand, "Because the Martin Collins manual never mentioned dynamic angle or vertical load, we were not negligent" versus, on the other, "Because the Martin Collins manual never mentioned dynamic angle or vertical load, only Martin Collins is to blame for plaintiff's injury." The former leads to a conclusion of nonliability because there was no breach of duty, while the latter suggests nonliability because proximate causation is lacking between defendants' negligence and Rene's injuries. But these are fine-grained distinctions, surely not fleshed out to the jury, and both conclusions arise from the same underlying fact regarding the Martin Collins manual.

¶ 32 Under these circumstances, we defer to the trial court's finding that defendants were arguing both theories—they were trying to exonerate their own behavior, to be sure, but they were also pointing the finger at Martin Collins. We cannot say that the trial court's take on the evidence was so arbitrary or unreasonable that no reasonable person would agree with it. Thus, we must reach the question of whether a sole proximate cause instruction was proper when defendants were implicating more than one nonparty actor as the sole proximate cause.

¶ 33 B

¶ 34 To succeed on a negligence claim, a plaintiff must prove that a defendant owed a duty to plaintiff, that it breached that duty, and that plaintiff suffered injuries that were proximately caused by defendant's breach of duty. *Leonardi v. Loyola University of Chicago*, 168 Ill. 2d

83, 93 (1995). There can be more than one proximate cause of a plaintiff's injury. *Id.* at 92. As long as the plaintiff proves that the defendant's breach of duty was one of the causes of the plaintiff's injuries, the defendant is liable. *Id.*

¶ 35     What is sometimes known as the "sole proximate cause defense" or the " 'empty chair' defense" is, in fact, not an affirmative defense at all. *Id.* at 92-94. The defendant is under no obligation to plead lack of proximate cause as an affirmative defense; the burden of proving proximate cause in a negligence action remains, at all times, on the plaintiff. *Id.* at 93-94. And as long as a defendant can proffer " 'some evidence in the record' " to support that sole proximate cause theory, that defendant is entitled to the long form of IPI Civil No. 12.04, the second paragraph of which embodies the sole proximate cause theory. *Id.* at 101 (quoting *Lowe v. Norfolk & Western Ry. Co.*, 124 Ill. App. 3d 80, 118 (1984)).

¶ 36     Nomenclature aside, the sole proximate cause theory is simply one way a defendant argues that the plaintiff failed to carry its burden of proof on proximate cause—specifically, by arguing that the negligence of another person or entity, not a party to the lawsuit, was the only proximate cause of the plaintiff's injuries. *Id.* at 94. Properly viewed as such, the sole proximate cause theory "merely focuses the attention of a properly instructed jury *** on the plaintiff's duty to prove that the defendant's conduct was *a* proximate cause of plaintiff's injury." (Emphasis added.) *Id.*

¶ 37     But what if the defendant is directing blame at two nonparty tortfeasors? The defendant may wish to argue that (1) nonparty *A*'s negligence was the sole proximate cause of the plaintiff's injuries; (2) nonparty *B*'s negligence was the sole proximate cause; or (3) the negligence of nonparty *A* and nonparty *B*, collectively, was the sole proximate cause. Those three arguments are simply three different ways of saying the same thing: that the plaintiff failed to prove that the party-defendant's negligence was a proximate cause of the plaintiff's injuries—not even 1% of the cause—because 100% of the cause of the plaintiff's injuries was the conduct of nonparty *A* and/or nonparty *B*. The critical point here is that the defendant's level of contribution to the plaintiff's injuries is 0%; whether 100% of the blame falls on nonparty *A*, nonparty *B*, or both, is of no import. The sole proximate cause theory should be just as viable with two or more nonparty actors as it is with a single nonparty.

¶ 38     That is the lesson we take from two decisions by our supreme court, *Ready v. United/Goedecke Services, Inc.*, 238 Ill. 2d 582, 591 (2010), and *Nolan v. Weil-McLain*, 233 Ill. 2d 416, 444 (2009).

¶ 39     In *Nolan*, 233 Ill. 2d at 419, the plaintiff sued 12 companies, claiming that the plaintiff's decedent developed mesothelioma after being exposed to asbestos-containing products. Before trial, 11 of the 12 defendants were dismissed. *Id.* The defendant sought to admit evidence that the sole proximate cause of the decedent's death was his exposure to the nonparty entities' asbestos-containing products. *Id.* The trial court barred defendant from introducing evidence of decedent's exposure to the nonparties' products. *Id.* at 421. The jury found the defendant liable. *Id.* at 426.

¶ 40     On appeal, the supreme court held that the trial court erred by denying the defendant's sole proximate cause evidence. The court noted that the defendant "wishe[d] to offer evidence of decedent's other exposures *** to contest causation through the use of the sole proximate cause defense." *Id.* at 438. The court again emphasized that the sole proximate cause defense "merely focuses the attention of a properly instructed jury *** on the plaintiff's duty to prove that the defendant's conduct was *a* proximate cause of plaintiff's

injury." (Emphasis added and internal quotation marks omitted.) *Id.* at 442. The court concluded "that the circuit court erred by relying on the appellate court's erroneous—and now overruled—decisions to prevent defendant from presenting evidence of decedents' other asbestos exposures in support of its sole proximate cause defense." *Id.* at 445.

¶ 41    A year after *Nolan*, the supreme court issued *Ready*, 238 Ill. 2d at 584, where the plaintiff's decedent was killed when a scaffolding truss fell eight stories and hit him. Before trial, the plaintiff settled with the general contractor, BMW Constructors, Inc. (BMW), and the decedent's employer, Midwest Generation EME, L.L.C. (Midwest). *Id.* The plaintiff filed a pretrial motion to exclude evidence of Midwest's and BMW's conduct. *Id.* at 585. In response, defendant argued that " 'there is plenty of evidence that the jury could decide that BMW's or Midwest['s] conduct was the sole proximate cause of Mr. Ready's death, and by eliminating our ability to bring in the conduct of Midwest *** or BMW you would preclude the defense from making that case and establishing that theory." *Id.* at 585-86. The trial court agreed with the plaintiff and barred defendant from introducing evidence of the settling nonparties' conduct. *Id.* at 586. The jury found defendant liable. *Id.* at 587.

¶ 42    Our supreme court agreed with the defendant. "Like the trial court in *Nolan*," the court wrote, "the trial court here erred in excluding evidence that would have supported the defendant's sole proximate cause defense." *Id.* at 591. The court reasoned that the defendant had the right to argue that one of the settling defendants, BMW, should have provided an external crane to lift the scaffolding, which would have eliminated the decedent's need to even be present at the location where he was injured. *Id.* As to the other settling defendant, the defendant could have introduced evidence that Midwest employed unqualified workers, improperly controlled the signaling on the project, and failed to follow its own safety manual. *Id.* at 591-92.

¶ 43    Thus, the court held, because "[t]his evidence would have tended to show that the settling defendants' conduct was the sole proximate cause of the accident, *** the trial court erred in excluding it and refusing to give the second paragraph" of IPI Civil No. 12.04. *Id.* at 592.

¶ 44    *Nolan* and *Ready* inescapably support the conclusion that the sole proximate cause theory is available to a defendant, even when that defendant is claiming that more than one nonparty actor's negligence was the sole proximate cause of plaintiff's injuries. In *Ready*, the defendant claimed that two different nonparty actors' negligence was the sole proximate cause; in *Nolan*, the defendant made that claim against no less than 11 nonparties. In light of these decisions, we do not see how we can accept plaintiff's argument, and the trial court's conclusion, that the sole proximate cause theory is inapplicable when a defendant claims that two different nonparties' negligence was the sole proximate cause of a plaintiff's injuries.

¶ 45    It is no distinction that *Nolan* never specifically discussed the propriety of the jury instruction that corresponds to the sole proximate cause theory, the second paragraph of IPI Civil No. 12.04; if there is sufficient evidence to support the sole proximate cause theory at trial, "the defendant is entitled to an instruction on this theory." *Leonardi*, 168 Ill. 2d at 101. In any event, our supreme court specifically held in *Ready*, 238 Ill. 2d at 592, that the trial court erred not only in excluding evidence of the nonparties' negligence but in "refusing to give the second paragraph" of IPI Civil No. 12.04 to support that sole proximate cause theory.

¶ 46    We are not persuaded by the case law cited by plaintiff. In *Holton v. Memorial Hospital*, 176 Ill. 2d 95, 134 (1997), the second paragraph of IPI Civil No. 12.04 was not applicable

because the defendant hospital *did not raise* a sole proximate cause theory at trial. Rather, the supreme court found the hospital merely argued at trial that the three nonparty doctors did not commit medical negligence in any way and thus neither did the hospital. *Id.* So while the supreme court did uphold the trial court's denial of a sole proximate cause instruction, that holding had nothing to do with the number of nonparty actors blamed, and everything to do with how the defendant presented its case at trial.

¶ 47    *Clayton v. County of Cook*, 346 Ill. App. 3d 367 (2003), supports plaintiff's position. There, the plaintiff's decedent attempted suicide by hanging and later died in the county hospital from resulting complications. *Id.* at 371-74. The plaintiff alleged medical negligence, most particularly a failed intubation. The defendant hospital's theory was that the decedent's death was solely caused by the hanging and complications from the hanging—namely, pneumonia, acute respiratory distress syndrome (ARDS), empyema, and bronchospasm. *Id.* at 387-88.

¶ 48    The trial court refused to give the jury instruction on sole proximate cause. *Id.* This court affirmed, holding that "defendant presented evidence of multifactorial causes of death, including pneumonia, ARDS, empyema and bronchospasm, rather than a *sole* proximate cause." *Id.* at 388. The defendant hospital had argued that "the circuit court's basis for denying the long form instruction, the presence of multiple causes, has no support in the case law," and this court responded that the defendant "provided no authority that supports its position. All the cases upon which the instant defendant relies involved defendants who tendered jury instructions based on a *sole* proximate cause, not multiple factors." (Emphasis in original.) *Id.* This court also noted that "witnesses did not address how the various preexisting conditions suffered by [the decedent] would constitute a sole proximate cause if the verdict were based on a failed intubation." *Id.*

¶ 49    We do not follow *Clayton*. For one, as we just noted, the court in *Clayton* found that the defendant had not introduced evidence to show that the various medical conditions the decedent suffered "would constitute a sole proximate cause" that entirely excluded the plaintiff's failed-intubation theory as one of the causes of plaintiff's death. *Id.* In that way, *Clayton* is distinguishable in much the same way as *Holton*—the sole proximate cause instruction was properly denied because there was no evidence at trial to support it.

¶ 50    Second and more importantly, in rejecting the idea that multiple causes besides the defendant's negligence could be the "sole" proximate cause of the decedent's death, the appellate court in *Clayton* specifically noted that the defendant had "provided no authority" for that position, that all of the cases the defendant cited involved a *single* other cause, "not multiple factors." *Id.* But *Clayton* was decided long before *Nolan* and *Ready*. Such authority now exists. It comes from a higher court. And it compels the opposite conclusion.

¶ 51    The primary case relied on by plaintiffs and the trial court is this court's more recent decision in *Abruzzo v. City of Park Ridge*, 2013 IL App (1st) 122360. There, the plaintiff sued the city when its paramedics failed to transport the decedent, Joey, to the hospital after Joey's father called 911. *Id.* ¶ 1. Joey's father claimed he found Joey unresponsive, but by the time the paramedics arrived, Joey was conscious, and the paramedics declined to take him to the hospital. *Id.* ¶¶ 7, 8. The next morning, Joey was found unconscious and taken to the hospital. *Id.* ¶ 28. He never regained consciousness and was declared brain dead. *Id.* Expert testimony established that Joey's condition may have been caused by an opiate overdose. *Id.* ¶ 21. Defendant's theory was that Joey's death "was caused by Joey's consumption of

narcotics and/or his father's contributory negligence" in not providing sufficient, accurate information about Joey to the paramedics who responded the first time. *Id.* ¶ 61.

At trial, the defendant requested a special interrogatory to "determine if the presence of opiates in Joey's bloodstream was the 'sole proximate cause' of his death." *Id.* ¶ 60. The trial court refused the special interrogatory but instructed the jury regarding the sole proximate cause defense. *Id.* The jury found defendant liable.

On appeal, this court held that the trial court properly refused defendant's special interrogatory on sole proximate cause. *Id.* ¶ 61. The court held that "defendant's position at trial, which identified two causes of Joey's death, does not satisfy any interpretation of a 'sole proximate cause' argument." *Id.* The court relied on the following quote from *Holton*:

> " 'A defendant is not automatically entitled to a sole proximate cause instruction wherever there is evidence that there may have been more than one, or concurrent, causes of an injury or where more than one person may have been negligent. Instead, a sole proximate cause instruction is not appropriate unless there is evidence that the *sole* proximate cause (not "a" proximate cause) of plaintiff's injury is conduct of another person or condition.' " (Emphasis in original.) *Id.* ¶ 62 (quoting *Holton*, 176 Ill. 2d at 134).

"Based on this precedent," the court concluded, "it is clear that the facts of this case did not warrant the giving of a sole proximate cause instruction. Ergo, defendant's sole proximate cause interrogatory was inappropriate and the trial court rightly refused to tender the interrogatory to the jury." *Id.* ¶ 63.

Like *Clayton*, the *Abruzzo* decision stands for the proposition that a defendant may not assert the sole proximate cause theory when that defendant is identifying the negligence of more than one nonparty entity—there, both Joey and his father—as the "sole" proximate cause. And as with *Clayton*, we are unable to reconcile *Abruzzo* with our supreme court's decisions in *Nolan* and *Ready*. Nor did *Abruzzo* attempt to do so; that decision did not mention, much less discuss, either of those supreme court decisions, which had been handed down several years earlier.

The citation to *Holton* in *Abruzzo*, quoted above, simply stands for the settled principle that a defendant cannot defeat a negligence claim merely by asserting that the conduct of a nonparty was *one of* the causes of the plaintiff's injury. If a defendant's negligence is one of the proximate causes of the plaintiff's injury, liability attaches, no matter how many other negligent acts also contributed to the injury—be they the acts of a codefendant at trial, a nonparty, or some condition like the weather. *Leonardi*, 168 Ill. 2d at 92. The concept of "sole proximate cause" arises only if the defendant's contribution to the plaintiff's injury is 0%—and the reason is that the acts of nonparties alone (or some condition) are 100% of the cause.

Both *Clayton* and *Abruzzo* are grounded in the notion that the word "sole" connotes the singular, and thus "sole proximate cause" must refer only to a single nonparty actor or cause, not multiple. There is nothing illogical about that reasoning, but neither is it the only possible conclusion. If we were to delve into linguistics, the word "sole" does not necessarily imply only the singular. Merriam-Webster's Dictionary defines "sole" not only as "having no companion: Solitary" or "being the only one" but also as "*belonging exclusively or otherwise limited to one usually specified* individual, unit, or *group*." (Emphases added.) Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/sole (last

visited June 4, 2018). Other definitions include "being the only one; only" along with "belonging or pertaining to one individual or *group to the exclusion of all others*; exclusive." (Emphasis added.) Dictionary.com, http://www.dictionary.com/browse/sole?s=t (last visited June 4, 2018).

¶ 58     So we might say that one person was the "sole" survivor of a car accident, but we would also say that two people were the "sole" survivors, plural. The paramount attribute of the word "sole" is its exclusivity, not its number. Used in the context of "sole proximate cause," the point is that the group of nonparties are exclusive in the sense that their collective negligence was 100% of the plaintiff's injury, and the party-defendant's contribution to the injury was zero. Whether that group consists of 11 nonparties (as in *Nolan*), 2 nonparties (*Ready*), or only a single nonparty is just a detail. Whether one of those nonparties is 100% responsible, or whether the 100% is divvied up among several nonparties, likewise makes no difference.

¶ 59     That is the only takeaway we could possibly glean from *Nolan* and *Ready*, and it is consistent with negligence law in general. The plaintiff has the burden of proof on proximate cause. If defendant *A* is on trial with codefendants *B* and *C* in a negligence action, nobody would deny that defendant *A* could ask the jury to find that the codefendants, individually or collectively, bore 100% of the blame for causing injury to the plaintiff. It might point all the blame on one of the two codefendants; it might say they were collectively responsible for all the cause; it might argue both. The point of the argument is that *none* of the fault can be attributed to defendant *A*, and thus the plaintiff has failed to carry its burden of proof as to defendant *A*. Nobody would deny that defendant *A* would be perfectly within its rights to make that argument.

¶ 60     We cannot imagine why this principle should be any different simply because the entities at which defendant *A* points the finger happen to be individuals or entities with whom the plaintiff has already settled (or chose not to sue) or merely because we often refer to this argument, in the context of nonparties, as the "sole proximate cause" argument. The theory is the same: The plaintiff failed to prove that even 1% of the cause of injury was defendant *A*'s negligence. Why should defendant *A*, in this context, suddenly be limited to implicating only a single nonparty, even when the evidence points to the conduct of multiple nonparties as comprising 100% of the cause of the plaintiff's injuries? We can think of no reason, and we find none in *Nolan* or *Ready*.

¶ 61     For what it's worth, case law from other jurisdictions supports our interpretation. See, *e.g.*, *Allen v. Chance Manufacturing Co.*, 873 F.2d 465, 467 (1st Cir. 1989) (defendant was entitled to sole proximate cause instruction implicating both plaintiff and plaintiff's employer, as "a defendant is relieved from all liability if it can show that the injury was legally caused in its entirety by *other* persons or entities—that is, that the sole proximate cause of the injury was elsewhere, and not in the defendant" (emphasis in original)); *Wagner v. Clark Equipment Co.*, 700 A.2d 38, 46 (Conn. 1997) ("It should not matter whether the intervening force is one act or a combination of acts, so long as it entirely breaks the causal connection between the defendant's conduct and the plaintiff's injuries so as to be the sole proximate cause of those injuries.").

¶ 62     The dissent labels it "absurd" that we would suggest that the conduct of two different actors could be the "sole" proximate cause of an injury. *Infra* ¶ 127. But we are not operating from a blank slate here. We see no other way to interpret *Ready*, 238 Ill. 2d at 592, when the

court held that, because the evidence in that case "would have tended to show that the *settling defendants' conduct* was the *sole* proximate cause of the accident, *** the trial court erred in excluding it and refusing to give the second paragraph" (emphases added) of IPI Civil No. 12.04. There were two settling defendants there—Midwest and BMW—accused of separate and distinct acts of negligence (see *id.* at 591-92), yet the court referred to their conduct collectively. We can only read that quote as stating that the defendant could have prevailed at trial had it established that 100% of the cause of the plaintiff's injury was attributable to (i) Midwest's conduct alone, (ii) BMW's conduct alone, or (iii) their conduct collectively, in whatever percentages it might be divided among them.

¶ 63    There is no question here that defendants presented evidence demonstrating that the conduct of the jockey, Theriot, was the sole proximate cause of plaintiff's injuries in that his horse "clipped" Rene's horse, causing the fall. The jury could have accepted defendants' argument that the Polytrack played no role in Rene's injury and the sole reason for Rene's injury was the fall caused by Theriot's horse. There is likewise no question—indeed, plaintiffs insist as much—that defendants implicated the track manufacturer, Martin Collins, for failing to notify Arlington Park of the need to monitor the dynamic shear angle and vertical load of the track. The jury could have accepted the argument pressed by defendants that, even if the Polytrack was negligently maintained as plaintiff insisted, the blame fell on Martin Collins, not defendants.

¶ 64    Because there was sufficient evidence to support the sole proximate cause theory concerning both Theriot and Martin Collins, defendants were entitled to that instruction. *Ready*, 238 Ill. 2d at 592; *Leonardi*, 168 Ill. 2d at 101. The trial court properly submitted that instruction to the jury. In granting plaintiff a new trial, the court committed legal error in ruling that the sole proximate cause instruction in IPI Civil No. 12.04 was incorrectly given as a matter of law.

¶ 65                                                    III

¶ 66    We next consider the propriety of the special interrogatory. It is a question of law we review *de novo*. *Smart v. City of Chicago*, 2013 IL App (1st) 120901, ¶ 32; *Abruzzo*, 2013 IL App (1st) 122360, ¶ 58; 735 ILCS 5/2-1108 (West 2016) ("Submitting or refusing to submit a question of fact to the jury may be reviewed on appeal, as a ruling on a question of law."). The submission of a defective special interrogatory warrants the overturning of a jury verdict only upon a showing of prejudice to the complaining party or jury confusion. *Bruske v. Arnold*, 44 Ill. 2d 132, 136-37 (1969); *Niewold v. Fry*, 306 Ill. App. 3d 735, 747 (1999); *Meister v. Henson*, 253 Ill. App. 3d 619, 629 (1993).

¶ 67    Recall that the special interrogatory asked the following: "On the date of the accident and at the time and place of the accident in question in this case was the conduct of some person other than the defendants the sole proximate cause of the plaintiffs' injuries?" The jury answered, "Yes." The special interrogatory tracked almost verbatim the second paragraph of IPI Civil No. 12.04 submitted to the jury: "However, if you decide that the sole proximate cause of injury to the plaintiff was the conduct of some other person other than the defendant, then your verdict should be for the defendant."

¶ 68    In granting plaintiff a new trial, the trial court found the special interrogatory "vague" and determined that "coupled with the sole proximate cause instruction," the special interrogatory "was improper and should not have been given in the form as worded." The

court determined that plaintiff was prejudiced by the "cumulative effect of the improper sole proximate cause instruction and vagueness of the special interrogatory." While the trial court explicitly found that the sole proximate cause instruction alone warranted a new trial, the court did *not* make that specific finding as to the special interrogatory.

¶ 69 Special interrogatories are governed by section 2-1108 of the Code of Civil Procedure, which states:

"Unless the nature of the case requires otherwise, the jury shall render a general verdict. The jury may be required by the court, and must be required on the request of any party, to find specially upon any material question or questions of fact submitted to the jury in writing. Special interrogatories shall be tendered, objected to, ruled upon and submitted to the jury as in the case of instructions. Submitting or refusing to submit a question of fact to the jury may be reviewed on appeal, as a ruling on a question of law. When the special finding of fact is inconsistent with the general verdict, the former controls the latter and the court may enter judgment accordingly." 735 ILCS 5/2-1108 (West 2016).

¶ 70 A special interrogatory is a check on the general verdict. *Simmons v. Garces*, 198 Ill. 2d 541, 555 (2002). "It tests the general verdict against the jury's determination as to one or more specific issues of ultimate fact." *Id.* As the statute provides, if a finding on a special interrogatory is inconsistent with the general verdict, the special finding controls, and the court must enter judgment consistent with that special finding. 735 ILCS 5/2-1108 (West 2016).

¶ 71 We do not have that situation here. There was no inconsistency between the special finding and general verdict. The jury answered the special interrogatory "yes," meaning it found that plaintiffs had failed to prove that any negligence of defendants proximately caused Rene's injuries; rather, the conduct of "some person other than defendants" was the sole proximate cause. That special finding was consistent with the jury's general verdict in favor of defendants.

¶ 72 That presents an insurmountable barrier for plaintiffs on appeal. We determined above that the jury was properly instructed on sole proximate cause via the long form of IPI Civil No. 12.04. So even if we agreed with plaintiffs that the special interrogatory was improperly given, even if we invalidated the special interrogatory and its accompanying special finding of "yes"—we would still have the general verdict in favor of defendants from a jury that was properly instructed on sole proximate cause. We do not see how plaintiffs could possibly establish prejudice from the special interrogatory, standing alone.

¶ 73 Nor could we possibly find jury confusion when (1) the jury was properly instructed via IPI Civil No. 12.04 on sole proximate cause, (2) the special interrogatory tracked that jury instruction nearly verbatim, and (3) the jury's general verdict and its special finding were entirely consistent. See, *e.g.*, *Bruske*, 44 Ill. 2d at 136-37 (though special interrogatory was in improper form, no reversible error found, as special finding comported with jury's verdict for defendant, and "[t]he jury was fully and adequately instructed on the law *** including the requirement of proximate cause"; thus, "there is little indication that the jury was confused by the interrogatory to the detriment of the plaintiff"). Our supreme court has cautioned against automatically finding jury confusion even when a special finding *conflicts* with a general verdict. See *Simmons*, 198 Ill. 2d at 563-64 ("A trial court may not conclude from the mere fact of inconsistency between a general verdict and a special interrogatory that the jury

- 13 -

was confused ***."). We cannot imagine how we could find that the jury was confused when the general verdict and special finding were perfectly consistent.

¶ 74 There being no basis for a finding of prejudice or jury confusion from the special interrogatory, there is likewise no basis for granting a new trial based on the submission of that special interrogatory.

¶ 75                                                    IV

¶ 76 In its response brief, plaintiff contends that we should affirm the order granting a new trial on alternate grounds, as the trial court improperly admitted evidence regarding the equine injury database. In its order granting a new trial, the trial court specifically found that its rulings regarding the database were not erroneous. Plaintiff argues that "a proper foundation could not be laid to establish similarity between information in the equine injury database and the circumstances surrounding Rene's injuries." This evidence, according to plaintiffs, "was irrelevant and created an improper basis of opinion testimony."

¶ 77 Defendants reply that the issue is forfeited. We agree.

¶ 78 Plaintiff's motion *in limine* Nos. 9 and 10 sought to bar the equine injury database evidence. Plaintiffs argued during trial, and on appeal, that defendants did not lay a proper foundation to establish similarity between information in the equine injury database and the circumstances surrounding Rene's injuries. The trial court denied plaintiff's motions *in limine*. At trial, defense expert Peterson discussed the equine injury database without objection. Peterson testified about the data that made up the database and specifically indicated that he "always think[s] we need to go back to the Equine Injury Database and look at the numbers from the Equine Injury Database, because you need a whole lot of data to say [*sic*] safe." Peterson specifically testified regarding his reliance on the equine injury data in his determination that the Arlington Park Polytrack was safe. Plaintiffs did not object to any of this testimony. It was only later that counsel stated: "Judge, I renew my objection."

¶ 79 A motion *in limine* is an interlocutory order, subject to reconsideration throughout the trial. *Krengiel v. Lissner Corp.*, 250 Ill. App. 3d 288, 294 (1993). "Consequently, a party whose motion *in limine* has been denied must object when the challenged evidence is presented at trial in order to preserve the issue for review," and "the failure to raise such an objection constitutes a waiver of the issue on appeal." *Id.*; see also *Cetera v. DiFilippo*, 404 Ill. App. 3d 20, 40 (2010) (plaintiffs forfeited alleged error when they did not ask circuit court to reconsider its ruling on motion *in limine* until after evidence deposition—which was subject of motion—had already concluded).

¶ 80 Here, plaintiff argued that defendants lacked foundation to discuss the equine injury database during their expert's testimony. When Peterson began to discuss the data included in the database and what he believed the data showed, plaintiff did not object. Only later did plaintiffs "renew" their objection. But by the time he "renewed" his objection, the jury had already heard the testimony; Peterson had already testified regarding the equine injury database and about its use in his opinion.

¶ 81 Even if we did not find the argument forfeited, we cannot say that the trial court erred in allowing Peterson to rely on the equine injury database. A trial court's decision to admit evidence is reviewed for an abuse of discretion. *Bosco v. Janowitz*, 388 Ill. App. 3d 450, 463 (2009). Here, in the order granting a new trial, the trial court found that it had properly

- 14 -

allowed testimony on the equine injury database because "Dr. Peterson specifically testified the EID is the type of data relied upon by experts in his field to evaluate the safety of surfaces."

¶ 82     Plaintiffs contend that the equine injury database was an improper basis for expert opinion because the defendants failed to establish a substantial similarity between that database and Rene's accident. The admissibility of other-incident evidence depends on whether the conditions of the other instances were substantially similar to the actual circumstances of the accident. See *Carrillo v. Ford Motor Co.*, 325 Ill. App. 3d 955, 967 (2001). Even if the evidence is not admitted into evidence, an expert may testify that they relied on it. *Id.* at 966; see also *Lovelace v. Four Lakes Development Co.*, 170 Ill. App. 3d 378, 382-83 (1988) ("evidence which is substantively inadmissible may nevertheless be admissible for the limited purpose of explaining the basis for an expert's opinion"). That is exactly what happened here. The equine injury database evidence was not admitted into evidence; Peterson merely testified that he believed it was useful to his opinion that the Polytrack was safe.

¶ 83     Plaintiffs cite one case in support of their argument. In *Lovelace*, 170 Ill. App. 3d at 383, the court noted that "[t]he determinative factor is whether the facts or data constitute information which the expert 'reasonably relies' as a basis for his opinion." Using this standard, the court held that "[p]laintiff did not produce any evidence to establish that experts in Heffernan's field usual rely on the condition or closure of other rinks in determining whether any particular rink is safe." *Id.* at 384.

¶ 84     *Lovelace* is distinguishable. Here, the expert, Peterson, specifically testified that data such as the equine injury database was reasonably relied on by experts in his field. Given this specific testimony, we cannot say that the trial court incorrectly allowed Peterson to rely on the data. Any question about the veracity of the data, or Peterson's reliance on it, speaks to the weight of the evidence, not whether it was properly relied on. See *Yassin v. Cerified Grocers of Illinois, Inc.*, 150 Ill. App. 3d 1052, 1065-66 (1986). We cannot say that the trial court abused its discretion in allowing Peterson to rely on the equine injury database.

¶ 85                                                     V

¶ 86     The trial court misapplied the law regarding sole proximate cause when it granted plaintiff's motion for a new trial. The order granting a new trial is reversed, and this matter is remanded to the circuit court with directions to reinstate the jury verdict.

¶ 87     Reversed and remanded with directions.

¶ 88     JUSTICE GORDON, dissenting:

¶ 89     The majority contends that "[t]his appeal primarily revolves around a single question: is the sole proximate cause theory and jury instruction available in a negligence action if a defendant argues more than one nonparty actor was the sole proximate cause of plaintiff's injury?" *Supra* ¶ 1. The majority answers this question in the affirmative after the trial court found the instruction improper in this case and granted plaintiff's motion for a new trial after a jury found in favor of defendants. I do not find that this appeal revolves around this "single question," and I find that the issues are much more complex than the majority leads us to

- 15 -

believe but it does concern only the issue of the sole proximate cause instruction's applicability to this case.

¶ 90                                  BACKGROUND

¶ 91    While the majority briefly discusses the trial proceedings in the instant case, I find the discussion of defendants' theory of the case and the sole proximate cause jury instruction to be instructive to the understanding of the issues before this court and so discuss them in greater depth.

¶ 92                              I. Trial Testimony

¶ 93    At trial, both parties presented expert testimony concerning the safety of the Polytrack surface, the biomechanics of plaintiff's injury, and the maintenance procedures used at Arlington.

¶ 94    Arun Kumar, a materials science engineer with a Ph.D. in materials science and corrosion science, provided testimony on behalf of plaintiffs concerning the properties and characteristics of the Polytrack surface at Arlington. Specifically, Kumar testified about the Polytrack's "dynamic angle" and "vertical load." Kumar testified that, in his opinion, defendants did not act as a reasonably careful operator of a racetrack in allowing the dynamic angle to be above 0.95 radians. Kumar further opined that defendants did not act as a reasonably careful operator of a racetrack in permitting the vertical loads to vary "because the properties of the surface kept changing from time to time." Kumar also opined that defendants' maintenance procedures, which did not provide maintenance guidelines for dynamic angle or vertical load, caused the conditions of the surface as they existed on the date of plaintiff's accident with respect to dynamic angle and vertical load.

¶ 95    In cross-examining Kumar, defense counsel asked him a question concerning whether he criticized Polytrack as a product. While plaintiffs' counsel's objection to this question was sustained, in a sidebar, defense counsel explained the purpose of the proposed line of questioning:

> "[T]he scope of [plaintiffs' counsel's] examination of his expert has involved the very product itself and the condition of the product as manufactured by Martin Collins; not only the condition, which they—which they say makes it susceptible to these—that was their case against Martin Collins, that the actual composition of the Polytrack, as sold to users around the world, had an inherent danger, inherent defect in it that it allowed itself to have high shear angles, dynamic angles, shear strengths, the product itself.
>
> And—but they didn't tell the buyer that any of that needed to be—that if that was known, that they wanted us to be testing for those conditions, nor did they warn any of their users in their maintenance manual that somehow the way that we rototill, Gallop Master, power harrow affects any of those principles, dynamic angle, shear angle.
>
> So for those reasons, they have opened up the scope of the product itself and and whatever defects are in the product.
>
> Moreover, we have a right to have Martin Collins be the sole proximate cause of the condition of this track, because they created the product. So the jury could decide,

- 16 -

for example, it wasn't the maintenance of the Polytrack, because you weren't warned in any of the product documents, the 25,000 documents that he referenced he reviewed, which came from—a lot of it came from Martin Collins. None of that information talked about shear angle, dynamic strength, all the principles you just heard him criticize Arlington for, none of the documents, in terms of how to use and maintain this product, the maintenance manual. Those concepts are not found there ***."

Later, in response to plaintiffs' counsel's argument to the court, defense counsel further argued:

"[Plaintiffs' counsel] said we're being faulted for the condition of the track. And the condition of the track, as we just heard for two hours, is the levels—the kilonewtons, the radians of the dynamic shear, the dynamic angle, and the vertical loads. That's the condition he is trying to hold Arlington responsible for. Those conditions never were told to us, as the buyer, from the manufacturer."

¶ 96        When cross-examination resumed, defense counsel questioned Kumar about the manuals that had been provided to Arlington by Martin Collins, and Kumar testified that the manuals provided recommendations for equipment to be used and how the track should be maintained. Kumar further testified that the manuals did not make any reference to how to maintain the track to obtain specific dynamic angles or vertical loads. Defense counsel asked Kumar:

"Q. Would you agree with me that there is no data provided by Martin Collins to any buyer of the product that talks about the ranges you're in court here today talking about?

A. Correct.

Q. The buyer of that product, relying upon the specifications that come with the product, the manual that comes with the product, is in the complete dark about how to use the product in a way to impact vertical loads, shear angles, and shear strength on those documents. Would you agree?

A. I agree with that."

Later, defense counsel again asked Kumar:

"Q. *** I think you've answered this. But there's nothing in the materials by the manufacturer, Martin Collins, to any racetrack, including Arlington Park, that you need to do anything about our Polytrack other than follow our maintenance manual, true?

A. That is correct."

¶ 97        Anthony Petrillo, general manager of Arlington, testified[1] about the maintenance procedures and training Arlington staff received when defendants purchased Polytrack. Petrillo testified that defendants purchased Polytrack from Martin Collins, which also provided the equipment and maintenance manual to maintain the product. Petrillo further explained that Jim Pendergest, a representative of Martin Collins, provided training to the staff following the installation of Polytrack. Petrillo testified that during training, Pendergest did not address dynamic angle, vertical load, or pocketing and further testified that, after

---

[1]Petrillo testified as an adverse witness on behalf of plaintiffs and as a witness for defendants.

reviewing the maintenance records, at the time of plaintiff's accident, defendants were meeting the minimum maintenance requirements set forth in the Martin Collins manual.

¶ 98    Javier Barajas, the track superintendent at the time Polytrack was installed, provided testimony through an evidence deposition for defendants concerning the maintenance routine at Arlington while he was there.[2] Barajas testified that he was working at Arlington when Arlington switched from a dirt track to a Polytrack surface on its main track. During the course of the installation of the Polytrack, Barajas met with the track superintendent at another track that had installed Polytrack, as well as with Jim Pendergest from Martin Collins, and received instruction on how to maintain the Polytrack in a written manual provided by Martin Collins. Barajas testified that he followed the manual Martin Collins had provided defendants and that he kept records of the maintenance that was performed on the track every day. He testified that Arlington did not have its own written procedures for maintenance but rather relied on the Martin Collins manual, and that the Martin Collins manual discussed the general type of equipment to be used, as opposed to setting forth a specific maintenance schedule. Barajas also testified that the manual at times directed the track superintendent to make discretionary determinations on what type of maintenance to use depending on varying conditions. He testified that, when determining whether the ground was too hard or too soft, he would decide whether to use certain equipment and what depth to use that equipment at based on the "feel" of the ground when he would put in a probe. Barajas also testified that the Martin Collins manual did not mention vertical load or dynamic angle or specify any vertical load or dynamic angle figures that needed to be maintained for safety. He further testified that, while he was aware of the concepts, he was not attempting to keep the track within certain ranges because he had not been instructed to do so and nobody had ever indicated that there was a problem. Peterson had never raised an "alarm" as to the dynamic angle or vertical load numbers, which Barajas would have expected him to do if there was a problem with the maintenance procedures Barajas was using.

¶ 99    Malagon, the track superintendent at Arlington at the time of plaintiff's accident, provided additional testimony[3] concerning the maintenance routine at Arlington. Malagon testified that when Polytrack was first being installed at Arlington, defendants sent him and a coworker to two other horse racetracks that already used Polytrack. Malagon testified that these tracks provided training to him and his coworker on how they used the equipment for Polytrack and allowed them to practice using the equipment. He also received training from Pendergest, from Martin Collins, at Arlington. Malagon testified that he would use a "deep probe" daily to determine how soft the surface was. He further testified that the daily maintenance records showed he did not use the rototiller or power harrow on the day of plaintiff's accident, which soften and loosen up the material, and that this would have been because the track was soft. Malagon was not familiar with the terms "vertical load" or "dynamic angle" and testified that Pendergest never instructed him about the concepts when training him on maintenance of the Polytrack, nor did the individuals at the other two

_____

[2]Barajas left Arlington in March 2009, two months before plaintiff's accident. Ricardo Malagon, who served as Barajas's assistant and was promoted to track superintendent after Barajas left, provided testimony about the maintenance routine that was similar in substance to Barajas's.

[3]Malagon testified through an interpreter as an adverse witness on behalf of plaintiffs and as a witness for defendants.

racetracks he visited as part of his training.

¶ 100                    II. Jury Instructions Conference and Closing Arguments

¶ 101      After both parties had rested and motions for directed verdict were denied, the parties discussed the applicable jury instructions. As relevant to the issue presented in the instant appeal, both parties tendered jury instructions on proximate cause; defendants' version was the long form of the instruction, including a discussion of sole proximate cause, to which plaintiffs objected. Defendants' proposed instruction was based on Illinois Pattern Jury Instructions, Civil, No. 12.04 (approved Dec. 8, 2011) (hereinafter IPI Civil No. 12.04), and provided:

> "More than one person may be to blame for causing an injury. If you decide that the defendants were negligent and that their negligence was a proximate cause of injury to the plaintiffs, it is not a defense that some third person who is not a party to the suit may also have been to blame.
>
> However[,] if you decide that the sole proximate cause of injury to the plaintiff was the conduct of some other person other than the defendant, then your verdict should be for the defendant."

Defendants argued that Theriot's conduct was the sole proximate cause of plaintiff's injury and that the track was not negligently maintained. The trial court found that defendants were entitled to a sole proximate cause instruction, finding that "[i]t's their theory of how this accident occurred. There is evidence that's been presented that a reasonable jury could conclude that something other than the maintenance and the track caused the injuries or contributed to the extent of the injuries here, and there was evidence *** presented that it was Theriot's conduct."

¶ 102      Plaintiffs then tendered a jury instruction based on IPI Civil No. 12.05, which concerned the intervention of an outside agency. Plaintiffs' tendered instruction provided:

> "If you decide that the defendants were negligent and that their negligence was a proximate cause of injury to the plaintiffs, it is not a defense that something else may also have been a cause of the injury."

The instruction contained an optional second paragraph, to be used when there was evidence tending to show that the sole proximate cause of the occurrence was something other than the conduct of the defendant:

> "However, if you decide that the sole proximate cause of injury to the plaintiff was something other than the conduct of the defendant, then your verdict should be for the defendant." IPI Civil No. 12.05.

Plaintiffs' counsel explained that plaintiffs were tendering the instruction because "the evidence that has come in about this could have been caused on any other surface, et cetera." Plaintiffs' counsel further explained that it was tendered without the paragraph concerning sole proximate cause "because I think the sole proximate cause should be limited to one or the other of these instructions. *** [I]t should be alluded to another person caused it or another thing caused it. I don't think you're entitled to two sole proximate cause arguments."

¶ 103      In response, defendants' counsel explained that defendants had requested the instruction concerning the sole proximate cause being the conduct of "some other person" under IPI Civil No. 12.04 as opposed to plaintiffs' proposed instruction based on IPI Civil No. 12.05

"because we believe the evidence shows that Martin Collins could also be a sole proximate cause based upon the evidence that the plaintiff is contending the dynamic angle, the shear strength, the vertical loads on the Polytrack itself were the cause of this accident and our failure to maintain." Defendants' counsel continued:

> "And we have presented overwhelming evidence that none of this information was given to us by the manufacturer in the product materials and also in their maintenance manual, that there's no evidence in the industry, there's no research that suggests these concepts that the plaintiffs have come up with have anything to do with jockeys being injured.
>
> But if they do, we're a property owner, and it's the manufacturer who designed and manufactured and distributed this product that contained those elements that the plaintiffs are now arguing caused the accident. So we—
>
> THE COURT: So you're saying you should get two proximate cause instructions?
>
> DEFENDANTS' COUNSEL: What I'm saying, Judge, is I believe under the law for sole proximate cause you're not limited to one actor, if you will. The jury could determine that it was Theriot that was the sole proximate cause or under the facts in this case—the unique facts in this case the jury could determine it was also Martin Collins."

The court noted that "I've never heard of that, that a sole proximate cause instruction—that you're arguing two separate entities could be the sole proximate cause." Defendants' counsel responded, "Yes." Plaintiffs' counsel also argued that there was not sufficient evidence to support Martin Collins being a cause, "let alone the sole proximate cause." Defendants' counsel then again argued:

> "Well, first of all, there's an issue of fact as to whether the .25 and .95 means anything to the condition of this material.
>
> But the mere fact that counsel is talking about the .25 to the .95, as has been established in this case, there are no product specifications telling a buyer that you need to actually test for specifications. Nowhere. Nowhere in the manual on the maintenance is it indicated at all that an owner and purchaser of this product should be testing for these principles that counsel is arguing now.
>
> That is why counsel had a product liability action against Martin Collins. There's nothing in the standards for a property owner to test a product such as Polytrack at all. We're a buyer.
>
> The testing obligations, as counsel spent years establishing against Martin Collins, was their obligation to test their product before they manufactured it and put it out into the stream of commerce.
>
> So all of these issues that we've just been arguing about up to this point have to do with the product itself.
>
> And it's uncontested that Martin Collins did not put any buyer of its product anywhere on notice that there was these conditions that had to be maintained in a certain way in order to be safe for jockeys.
>
> So that is—the jury could easily determine that it's—there's an inherent danger in this and that Arlington wasn't warned about those inherent dangers and that a manufacturer has an obligation to warn of those dangers in its product.

And witness after witness, including the plaintiffs' experts—I asked them. Are you talking about all these principles, even though we believe they have misapplied these principles. Nonetheless, his experts relied upon those principles, the dynamic shear, shear strength, vertical load; and they admitted in cross-examination nowhere is that information provided from the manufacturer; not in the specifications, the documents they give their buyers, not in the manual itself, not in any training that they provided to maintain the product, nowhere.

And the jury could decide the product itself, the Polytrack, is what's dangerous. There was no notice to Arlington Park that they had to do something other than follow the manual in order to alleviate the levels of the dynamic angle and vertical load, and that is something a manufacturer should have done.

So we believe that there's proper evidence, and we also believe under the whole law about the—what circumstances would apply for a sole proximate cause instruction, it also could apply—the jury could decide that it's Martin Collins' conduct that caused the injuries to the plaintiff, the inherent dangerous nature of the Polytrack itself."

The trial court found that defendants were not entitled to "two separate distinct sole proximate cause instructions." Defendants' counsel clarified that they were not asking for two instructions, and had only requested the instruction in IPI Civil 12.04, which the trial court had indicated it would give. However, defendants' counsel argued that "the instruction, even by its definition, says more than one person may be to blame. That's not in the singular. Only one other person may be to blame. It's more than one person."

¶ 104 After discussing the rest of the jury instructions, defendants tendered a special interrogatory, which read:

" 'On the date of the accident and at the time and place of the accident in question in this case was the conduct of some person other than the defendants the sole proximate cause of the accident.' "

Plaintiffs objected, arguing that "[t]his is not an ultimate fact of the case. This is an evidentiary finding ***." Plaintiffs also cited a case in which a court "said it was misleading for an instruction to ask whether the conduct of a defendant was a proximate cause but for a special interrogatory to ask whether the conduct of others was the cause and for that reason the Court found the instruction confusing." Defendants' counsel argued that the special interrogatory was appropriate and that the language came from a different case in which such a special interrogatory had been used. The trial court took the matter under advisement overnight.

¶ 105 The record indicates that defendants filed a trial brief in support of their request for a special interrogatory that night, a purported copy of which appears in the record on appeal.[4] After arguing that the special interrogatory tendered by defendants should be given,

---

[4]The parties filed a stipulation regarding materials contained in the supplemental record on appeal, which indicates, in relevant part, that the supplemental record contains a "true and accurate cop[y]" of "Defendants Arlington Park Racecourse, LLC and Churchill Downs, Inc.'s Trial Brief in Support of Special Interrogatories." However, the document contained in the supplemental record lacks a file stamp or signature.

defendants argued that "[a]lternatively, defendants propose that the following interrogatories be given:"

> " 'On the date of the accident and at the time and place of the accident in question in this case, was jockey Jamie Theriot's conduct of jostling and bumping Rene Douglas' mount the sole proximate cause of the accident?'
>
> 'Was Martin Collins Surfaces & Footings, LLC failure to warn defendants that they were required [to] control and maintain the dynamic angle, surface friction shear and vertical load or hardness of the Polytrack at a certain level the sole proximate cause of the accident?' "

¶ 106    The next day, the court indicated that it was not going to give the jury the special interrogatory due to the use of the phrase "of the accident." Defendants then modified the special interrogatory to read:

> "On the date of the accident and at the time and place of the accident in question in this case, was the conduct of some person other than the defendants the sole proximate cause of the plaintiffs' injuries."

The trial court agreed to give the modified special interrogatory over plaintiffs' objection.

¶ 107    During closing argument, defendants did not argue that Martin Collins was the cause of plaintiff's injuries but argued that the actions of Theriot in bumping plaintiff's horse were the cause of plaintiff's injuries.

¶ 108    On May 6, 2016, the jury entered a verdict in favor of defendants. The jury also answered the special interrogatory in the affirmative. On the same day, the trial court entered judgment on the verdict.

¶ 109                                    III. Posttrial Motion

¶ 110    On June 20, 2016, plaintiffs filed a posttrial motion for a new trial. Plaintiffs first argued that the admission of evidence concerning the equine injury database was highly prejudicial. Plaintiffs noted that the database compared the frequency of catastrophic equine breakdowns on dirt, turf, and synthetic racetrack surfaces but (1) included information from several types of synthetic surfaces, including different formulations of Polytrack, without differentiating between the different surfaces; (2) included data postdating the incident at issue, which would have been irrelevant to the issue of whether Arlington's Polytrack was unreasonably dangerous at the time of the incident; and (3) was not limited to solely racing incidents and did not make any distinctions based on surface age or surface condition. Plaintiffs further noted that defendants did not allege that Arlington's surface caused plaintiff's horse to fall due to a catastrophic breakdown but instead alleged that plaintiff's horse was bumped by another horse, making data about catastrophic breakdowns irrelevant to any fact at issue.

¶ 111    Plaintiffs also argued that the trial court erred in instructing the jury as to sole proximate cause because defendants presented evidence that both the conduct of Theriot, the other jockey, and the conduct of Martin Collins were proximate causes of plaintiff's injury, "mak[ing] the sole proximate cause defense inapplicable." Plaintiffs further argued that the special interrogatory submitted to the jury on the issue was not sufficiently particularized, merely asking whether the conduct of "some person" other than defendants was the sole proximate cause of plaintiffs' injuries.

¶ 112    On October 13, 2016, the trial court entered an order granting plaintiffs' motion for a new trial. First, the court found no error in the use of data from the equine injury database, noting that the data itself was not admitted into evidence but was only discussed by Peterson as a basis for his expert testimony. However, the trial court found that defendants were not entitled to the sole proximate cause jury instruction, as defendants "proffered two alternate proximate causes of Douglas' injuries." The court further found that this improper jury instruction prejudiced plaintiffs and warranted a new trial. Additionally, the trial court found that the special interrogatory was "ambiguous and therefore not in proper form." The court found that "the special interrogatory should have been specific as to whose conduct the jury was to consider. 'Some other person' was vague and coupled with the sole proximate cause instruction was improper and should not have been given in the form as worded." The court further found that "[t]he cumulative effect of the improper sole proximate cause instruction and vagueness of the special interrogatory is seriously prejudicial to the Plaintiffs and denied them a fair trial."

¶ 113                                      ANALYSIS

¶ 114    On appeal, defendants argue that the trial court erred in granting plaintiffs' posttrial motion for a new trial because the sole proximate cause jury instruction and special interrogatory were properly given. "A circuit court's ruling on a motion for a new trial is afforded considerable deference and will only be reversed in those instances where it is affirmatively shown that the court clearly abused its discretion." *Wardwell v. Union Pacific R.R. Co.*, 2017 IL 120438, ¶ 11. "In determining whether the trial court abused its discretion, the reviewing court should consider whether the jury's verdict was supported by the evidence and whether the losing party was denied a fair trial." *Maple v. Gustafson*, 151 Ill. 2d 445, 455 (1992). "Furthermore, it is important to keep in mind that [t]he presiding judge in passing upon the motion for new trial has the benefit of his previous observation of the appearance of the witnesses, their manner in testifying, and of the circumstances aiding in the determination of credibility." (Internal quotation marks omitted.) *Maple*, 151 Ill. 2d at 456. "An abuse of discretion occurs when the trial court's ruling is arbitrary, fanciful, or unreasonable, or when no reasonable person would take the same view." *Cimino v. Sublette*, 2015 IL App (1st) 133373, ¶ 102. What the majority is saying here, then, is that the trial court's ruling is arbitrary, fanciful, or unreasonable or that no reasonable judge would have granted a new trial. I cannot say that under the facts and circumstances of this case.

¶ 115    In the case at bar, the trial court found that it had erred in giving the sole proximate cause jury instruction and the special interrogatory and found that these errors seriously prejudiced plaintiffs and denied them a fair trial. I discuss each issue in turn.

¶ 116                      I. Sole Proximate Cause Jury Instruction

¶ 117    "Generally, a trial court's decision to grant or deny an instruction is reviewed for abuse of discretion." *Studt v. Sherman Health Systems*, 2011 IL 108182, ¶ 13. " 'The standard for determining an abuse of discretion is whether, taken as a whole, the instructions are sufficiently clear so as not to mislead and whether they fairly and correctly state the law.' " *Studt*, 2011 IL 108182, ¶ 13 (quoting *Dillon v. Evanston Hospital*, 199 Ill. 2d 483, 505 (2002)). In the case at bar, the trial court found that it should not have allowed the instruction to be given in the first place.

¶ 118   The jury instruction at issue was based on IPI Civil No. 12.04, and provided:

> "More than one person may be to blame for causing an injury. If you decide that the defendants were negligent and that their negligence was a proximate cause of injury to the plaintiffs, it is not a defense that some third person who is not a party to the suit may also have been to blame.

> However[,] if you decide that the sole proximate cause of injury to the plaintiff was the conduct of some other person other than the defendant, then your verdict should be for the defendant."

¶ 119   "A litigant has the right to have the jury clearly and fairly instructed upon each theory which was supported by the evidence." *Leonardi v. Loyola University of Chicago*, 168 Ill. 2d 83, 100 (1995). Accordingly, our supreme court has instructed that, "where there is some competent evidence that the sole proximate cause of a plaintiff's claimed injury lies in the conduct of someone other than the defendant, the defendant is entitled to have the jury instructed pursuant to the second paragraph of" the IPI instruction. *McDonnell v. McPartlin*, 192 Ill. 2d 505, 522 (2000). "A defendant has the right not only to rebut evidence tending to show that defendant's acts are negligent and the proximate cause of claimed injuries, but also has the right to endeavor to establish by competent evidence that the conduct of a third person, or some other causative factor, is the sole proximate cause of plaintiff's injuries. Further, if the evidence is sufficient, the defendant is entitled to an instruction on this theory." *Leonardi*, 168 Ill. 2d at 101. " 'Whether the jury would have been persuaded is not the question. All that is required to justify the giving of an instruction is that there be some evidence in the record to justify the theory of the instruction.' " *Leonardi*, 168 Ill. 2d at 101 (quoting *Lowe v. Norfolk & Western Ry. Co.*, 124 Ill. App. 3d 80, 118 (1984)). However, it is important to keep in mind that "[a] defendant is not automatically entitled to a sole proximate cause instruction wherever there is evidence that there may have been more than one, or concurrent, causes of an injury or where more than one person may have been negligent. Instead, a sole proximate cause instruction is not appropriate unless there is evidence that the *sole* proximate cause (not 'a' proximate cause) of a plaintiff's injury is conduct of another person or condition." (Emphasis in original.) *Holton v. Memorial Hospital*, 176 Ill. 2d 95, 134 (1997). "It is within the trial court's discretion to determine what issues are raised by the evidence and whether an instruction should be given." *Bryant v. LaGrange Memorial Hospital*, 345 Ill. App. 3d 565, 573 (2003).

¶ 120   In the case at bar, the issue is not whether there was evidence in the record to support a theory that Theriot was the proximate cause of plaintiff's injuries. The problem the trial court found was that there was *also* evidence in the record to support a theory that *Martin Collins* was the proximate cause of plaintiff's injuries under a product liability theory.[5] Thus, there

---

[5]The majority repeatedly suggests that the "negligence" of Martin Collins was the second potential proximate cause. However, any liability of Martin Collins would have been predicated on a product liability theory, not a negligence theory. In a strict product liability action, a plaintiff must establish that the injury complained of resulted from a condition of the product, that the condition was unreasonably dangerous, and that it existed at the time the product left the manufacturer's control. *Mikolajczyk v. Ford Motor Co.*, 231 Ill. 2d 516, 525 (2008). "A product may be found to be unreasonably dangerous based on proof of any one of three conditions: a physical defect in the product itself, a defect in the product's design, or a failure of the manufacturer to warn of the danger or to instruct on the proper use

was evidence to support a finding that two separate individuals or entities were the "sole proximate cause" of plaintiff's injuries, each under separate theories—Theriot under the theory of negligence and Martin Collins under the theory of product liability. The instruction as given did not identify the party who defendants claimed was the "sole proximate cause" of the injuries—it merely parroted the language of the IPI instruction and asked whether "the sole proximate cause of injury to the plaintiff was the conduct of some other person other than the defendant," when there were two other persons with conflicting theories. The question we must answer, then, is whether a sole proximate cause instruction should have been given in this case when there were two possible "sole proximate cause[s]" under the evidence in this case, one under the theory of product liability and the other under the theory of negligence.[6]

¶ 121    Defendants and the majority answer this question in the affirmative, relying on two Illinois Supreme Court cases: *Nolan v. Weil-McLain*, 233 Ill. 2d 416 (2009), and *Ready v. United/Goedecke Services, Inc.*, 238 Ill. 2d 582 (2010). However, neither case speaks directly to the issue present in the instant appeal. In *Nolan*, the plaintiff filed a wrongful-death suit on behalf of her deceased husband's estate, alleging that the decedent developed mesothelioma after being negligently exposed to the defendant's asbestos-containing products; the plaintiff originally filed suit against 12 corporations, but by the time of trial, only one defendant remained. *Nolan*, 233 Ill. 2d at 418-19. The defendant sought to present evidence that the sole proximate cause of the decedent's death was his exposure to asbestos-containing products of nonparty entities, but the trial court barred such evidence. *Nolan*, 233 Ill. 2d at 419-21. However, at the close of trial, the trial court gave the jury a sole proximate cause instruction over the plaintiff's objection, "explaining that jurors could reasonably find that decedent's mesothelioma was not caused by asbestos exposure from defendant's products ***. Based on that finding, the jury could conclude that some other asbestos product was the sole proximate cause of decedent's disease." *Nolan*, 233 Ill. 2d at 426. On appeal, the Illinois Supreme Court found that the trial court should not have barred the defendant from presenting evidence of other asbestos exposure in support of the defendant's defense that the sole proximate cause was some other person or entity not in the case. *Nolan*, 233 Ill. 2d at 444-45. The issue of whether the sole proximate cause instruction should have been given was not an issue in the case.

¶ 122    In *Ready*, the plaintiff also filed a wrongful-death suit on behalf of her deceased husband's estate after the decedent was killed in a construction accident at the power plant where he worked. *Ready*, 238 Ill. 2d at 584. The plaintiff initially filed suit against the general contractor of the project and the project's scaffolding subcontractor and later added the decedent's employer as a defendant; by the time of trial, only the subcontractor remained as a defendant. *Ready*, 238 Ill. 2d at 584-85. Prior to trial, the plaintiff filed motions *in limine* to bar evidence of the conduct of the general contractor and the employer, and the

---

of the product." *Mikolajczyk*, 231 Ill. 2d at 525. The claims against Martin Collins clearly fall under the third of these conditions.

[6]I agree with the majority that defendants' claim that they only raised the issue of Theriot's conduct, not Martin Collins's, before the jury is unpersuasive. While Theriot's conduct may have been the only argument made at closing argument, defendants spent considerable time building a record against Martin Collins through their examination of the witnesses at trial.

subcontractor argued that this evidence was relevant to the subcontractor's ability to establish a sole proximate cause defense; the trial court barred the evidence, finding that there was no evidence to support the sole proximate cause defense. *Ready*, 238 Ill. 2d at 585-86. At the end of the trial, the subcontractor also requested a sole proximate cause jury instruction, which was denied. *Ready*, 238 Ill. 2d at 587. The supreme court found that the trial court erred in excluding evidence that would have supported the subcontractor's sole proximate cause defense and then proceeded to consider whether the evidence would have supported a sole proximate cause jury instruction. *Ready*, 238 Ill. 2d at 591. The supreme court noted that, with respect to the general contractor, the subcontractor argued that the evidence excluded by the trial court would have shown that the general contractor should have provided an external crane to lift the scaffolding, which would have eliminated the need for the decedent to work on the project and, in turn, would have prevented the accident. *Ready*, 238 Ill. 2d at 591-92. With respect to the employer, the subcontractor argued that the evidence would have shown, in part, that the employer forced the subcontractor to accept additional workers on the project, including the decedent. *Ready*, 238 Ill. 2d at 591-92. The supreme court found that "[t]his evidence would have tended to show that the settling defendants' conduct was the sole proximate cause of the accident, and [the decedent's] death, and the trial court erred in excluding it and refusing to give the second paragraph of IPI Civil (2000) No. 12.04." *Ready*, 238 Ill. 2d at 592.

¶ 123    I cannot find that either case is particularly instructive to the instant case. First, neither case involved the trial court *giving* a sole proximate cause jury instruction that involved multiple parties with multiple theories of liability; both cases involved the decision of the trial court to *bar* such evidence. Thus, questions as to the form of the jury instruction were not before the supreme court. Additionally, neither case concerned the type of situation present in the case at bar, namely, that there are arguably two distinct, unrelated causes of plaintiff's injuries other than defendants' conduct. In *Nolan*, while there were multiple nonparties that were involved, the claimed "sole proximate cause" was the exposure of the decedent to asbestos, meaning that the multiple nonparties' conduct combined into one "cause." See *Nolan*, 233 Ill. 2d at 419 ("defendant sought to present evidence that the sole proximate cause of decedent's death was his exposure to asbestos-containing products of nonparty entities").

¶ 124    Similarly, in *Ready*, the actions of both the general contractor and the employer were discussed collectively, and the supreme court concluded that the evidence "would have tended to show that *the settling defendants' conduct* was the sole proximate cause of the accident." (Emphasis added.) *Ready*, 238 Ill. 2d at 592. In other words, the supreme court considered the conduct of the two nonparties together in determining that the sole proximate cause instruction should have been given—the supreme court considered the conduct of the general contractor *and* the employer as the potential cause, as opposed to the conduct of the general contractor *or* the employer as the potential cause.[7]  See also *Ready*, 238 Ill. 2d at 586

_____

[7]As noted, the supreme court did separate the two entities in setting forth the subcontractor's arguments about what the evidence would show as to causation for each entity. *Ready*, 238 Ill. 2d at 591-92. However, directly after doing so, the supreme court found that the evidence would have tended to show that "the settling defendants' conduct was the sole proximate cause" of the accident, grouping the two entities' conduct together into one "cause," as we have discussed. *Ready*, 238 Ill. 2d at 592. Presumably, if there had been no evidence as to one of the entities' conduct, the supreme court would

- 26 -

(in arguing for reconsideration of the trial court's order barring evidence of the nonparties' conduct, the subcontractor argued that the trial court should permit it " 'to introduce and argue to the jury that other parties, such as BMW and [Midwest,] are the sole proximate cause' " of the decedent's death); *Ready*, 238 Ill. 2d at 587 (in denying the sole proximate cause jury instruction, the trial court found that " 'there *** shouldn't be any evidence in the record of Midwest and BMW's negligence' "); *Ready*, 238 Ill. 2d at 587 (in its posttrial motion, the subcontractor "argued that the trial court erred in excluding evidence regarding the conduct of BMW and Midwest as the sole proximate cause of the accident"). These two cases, therefore, while dealing with multiple parties, still boil down to a single type of "conduct" that is potentially "the sole proximate cause."

¶ 125    In the case at bar, by contrast, the two alternate "sole proximate cause" theories are not so related. The conduct of Theriot in allegedly causing his horse to bump plaintiff's horse off course is completely unrelated to the conduct of Martin Collins in allegedly failing to specify that the dynamic angle and vertical load of the Polytrack needed to be within certain ranges. Accordingly, I cannot find that cases in which multiple parties' conduct collectively combines into one "sole proximate cause" are particularly instructive to our analysis in the instant case, where there are two separate theories of negligence, much less that these cases "inescapably support the conclusion" that the instruction was available, as the majority asserts. *Supra* ¶ 44.

¶ 126    Our focus, then, should turn to the language of the jury instruction itself. See *McDonnell*, 192 Ill. 2d at 517-19 (interpreting the language of the jury instruction to determine whether the instruction should have been given). As noted, the instruction given was based on the long form of IPI Civil No. 12.04, and provided:

> "More than one person may be to blame for causing an injury. If you decide that the defendants were negligent and that their negligence was a proximate cause of injury to the plaintiffs, it is not a defense that some third person who is not a party to the suit may also have been to blame.
>
> However[,] if you decide that the sole proximate cause of injury to the plaintiff was the conduct of some other person other than the defendant, then your verdict should be for the defendant."

¶ 127    Examining the plain language of this instruction, I must agree with the trial court that the sole proximate cause language is inappropriate where there is evidence of multiple—independent—potential causes of the plaintiff's injuries by multiple parties. The sole proximate cause instruction contemplates just that—the "sole" proximate cause of the plaintiff's injury. "Sole" is defined as "[o]ne and only" or "[b]elonging or restricted to one person or group of people." Oxford English Dictionary, http://en.oxforddictionaries.com/definition/sole (last visited June 18, 2018). The majority attempts to torture the definition of this word to suggest that "the word 'sole' does not necessarily imply only the singular." *Supra* ¶ 57. It does so by pointing to dictionary definitions that include the term "group." The definition I have quoted above also includes the term "group." But the majority's strained argument completely glosses over the important part of the definition—"*one* person or group of people." (Emphasis added.) Oxford English Dictionary, http://en.oxforddictionaries.com/

---

have concluded that the subcontractor would have been entitled to a sole proximate cause instruction as to that entity alone.

definition/sole (last visited June 18, 2018). Each of the majority's quoted definitions also includes this same limitation. Even though a group may be made of a number of individuals, it is still a collective singular, and the majority's attempt to contort this meaning to encompass multiple distinct parties is simply absurd. "Any competent speaker of English" (*In re K.M.*, 2018 IL App (1st) 172349, ¶ 31) would recognize that sole means one.

¶ 128    Furthermore, the jury instruction speaks of "the" sole proximate cause of injury, using the definite article "the" as opposed to the indefinite "a." " '[T]he definite article "the" particularizes the subject which it precedes. It is a word of limitation as opposed to the indefinite or generalizing force of "a" or "an." ' " (Emphasis omitted.) *Sibenaller v. Milschewski*, 379 Ill. App. 3d 717, 722 (2008) (quoting *Brooks v. Zabka*, 450 P.2d 653, 655 (Colo. 1969)). Finally, the instruction speaks to "the conduct of some *person* other than the defendant." (Emphasis added.) IPI Civil No. 12.04. "Person" is a singular term. *Schwartz v. Kinney*, 2016 IL App (3d) 160021, ¶ 15. Thus, the language of the instruction is clearly aimed at one particular "cause," not two.

¶ 129    I also note that the "Notes on Use" accompanying the IPI instruction provide that "[t]he second paragraph should be used only when there is evidence tending to show that the sole proximate cause of the occurrence was the conduct of a third person." IPI Civil No. 12.04, Notes on Use. It does not say "third persons." This language is even more particularized than the instruction itself—the notes on use indicate that the long-form instruction is only appropriate where the sole proximate cause was the conduct of "a third person," as opposed to the instruction's broader "some person," or the use of "third person or persons." The notes on use thus make it clear that the long-form instruction is limited to one person. In the case at bar, therefore, where there are two different potential unrelated causes, the trial court did not abuse its discretion in determining that the sole proximate cause instruction should not have been given.

¶ 130    Other courts have read this language the same way, finding the sole proximate cause instruction inappropriate in cases involving more than one potential cause. For instance, in *Clayton v. County of Cook*, 346 Ill. App. 3d 367, 388 (2004), the appellate court found that the trial court had not abused its discretion in refusing to give the sole proximate cause jury instruction where the "defendant presented evidence of multifactorial causes of death, including pneumonia, ARDS, empyema, and bronchospasm, rather than a sole proximate cause." The court noted that "[a]ll of the cases upon which the instant defendant relies involved defendants who tendered jury instructions based on a *sole* proximate cause, not multiple factors." (Emphasis in original.) *Clayton*, 346 Ill. App. 3d at 388. Likewise, in *Abruzzo v. City of Park Ridge*, 2013 IL App (1st) 122360, ¶ 61, while a sole proximate cause jury instruction was given,[8] the appellate court found that the trial court had not erred in refusing a special interrogatory concerning sole proximate cause. The court reasoned that, "[f]irst and foremost, defendant did not claim at trial that the presence of opiates in Joey's bloodstream was the *sole*, or *only*, cause of his death." (Emphases in original.) *Abruzzo*, 2013 IL App (1st) 122360, ¶ 61. The court noted that the "defendant claimed that the death was caused by Joey's consumption of narcotics and/or his father's contributory negligence. Accordingly, defendant's position at trial, which identified two causes of Joey's death, does

---

[8]The propriety of the jury instruction does not appear to have been at issue on appeal.

not satisfy any interpretation of a 'sole proximate cause' argument." *Abruzzo*, 2013 IL App (1st) 122360, ¶ 61.

The majority deals with these cases by simply announcing that they are wrong. See *supra* ¶ 49 ("We do not follow *Clayton*."); *supra* ¶ 55 ("we are unable to reconcile *Abruzzo* with our supreme court's decisions in *Nolan* and *Ready*"). However, as even the majority admits, both cases support plaintiff's position. The only way the majority can distinguish them is by dismissing them because they do not follow the majority's reading of *Nolan* and *Ready*. The majority notes that *Abruzzo* does not cite either case, but fails to consider that perhaps that court determined—as I do here—that neither case is applicable to the facts of the case before it.

I also find instructive our supreme court's caution in *Holton*, 176 Ill. 2d at 134, where the court noted that "[a] defendant is not automatically entitled to a sole proximate cause instruction wherever there is evidence that there may have been more than one, or concurrent, causes of an injury or where more than one person may have been negligent. Instead, a sole proximate cause instruction is not appropriate unless there is evidence that the *sole* proximate cause (not 'a' proximate cause) of a plaintiff's injury is conduct of another person or condition." (Emphasis in original.)

In the case at bar, as noted, there was evidence presented that Theriot was the proximate cause of plaintiff's injuries, as well as evidence presented that Martin Collins's conduct was the proximate cause of plaintiff's injuries. Consequently, it was inappropriate for the trial court to give an instruction concerning the "sole" proximate cause of plaintiff's injuries when more than one person could be the sole proximate cause and the theories of liability were not the same.

I do not share the majority's concern that in cases where there are multiple other causes, "[w]hy should defendant *A*, in this context, suddenly be limited to implicating only a single nonparty, even when the evidence points to the conduct of multiple nonparties as comprising 100% of the cause of the plaintiff's injuries?" *Supra* ¶ 60. If the defendant at trial is faultless and 100% of the fault lies with others, there is no prohibition against making that argument to the jury. However, if there are multiple distinct "others," the defendant simply cannot rely on the sole proximate cause jury instruction to make that argument. IPI Civil No. 12.04—even without the second paragraph—still requires the jury to consider whether the defendant's "negligence was a proximate cause of injury to the plaintiffs." The jury can still determine that the plaintiff failed to prove its case because the evidence shows that all of the fault lies with others and there is no evidence that the defendant was a proximate cause of the injury. A finding that "sole" means "one" does not disturb that calculus in the slightest—all it does is reduce jury confusion, as I discuss later in this dissent.

## II. Special Interrogatory

Similarly, I cannot find that the trial court erred in finding that it should not have given the special interrogatory tendered by defendants. "A special interrogatory serves 'as [a] guardian of the integrity of a general verdict in a civil trial.' [Citation.] It tests the general verdict against the jury's determination as to one or more specific issues of ultimate fact." *Simmons v. Garces*, 198 Ill. 2d 541, 555 (2002) (quoting *O'Connell v. City of Chicago*, 285 Ill. App. 3d 459, 460 (1996)). "[A] special interrogatory: (1) should consist of a single direct question; (2) should not be prejudicial, repetitive, misleading, confusing or ambiguous; and

(3) should use the same language or terms as the tendered instructions." *Smart v. City of Chicago*, 2013 IL App (1st) 120901, ¶ 32. A trial court's decision regarding a request for a special interrogatory is reviewed *de novo*. *Smart*, 2013 IL App (1st) 120901, ¶ 32. *De novo* consideration means we perform the same analysis that a trial judge would perform. *Khan v. BDO Seidman, LLP*, 408 Ill. App. 3d 564, 578 (2011).

¶ 137    In the case at bar, the trial court gave the jury the following special interrogatory over plaintiffs' objection:

> "On the date of the accident and at the time and place of the accident in question in this case, was the conduct of some person other than the defendants the sole proximate cause of the plaintiffs' injuries."

I also agree with the trial court that this special interrogatory was ambiguous and, therefore, not in proper form.

¶ 138    The primary problem with the special interrogatory is the same problem that exists with the sole proximate cause jury instruction, as discussed above—under the facts of the instant case, there are two alternative theories for the "cause" of plaintiff's injuries. The special interrogatory does not identify the "cause" other than by asking whether the conduct of "some person other than the defendants" was the sole proximate cause of plaintiff's injuries. A special interrogatory "should be a single question, stated in terms that are simple, unambiguous, and understandable; it should not be repetitive, confusing, or misleading." *Simmons*, 198 Ill. 2d at 563. This special interrogatory, by contrast, does not meet that standard, as it is unclear whose conduct the special interrogatory is referring to.

¶ 139    The special interrogatories in the cases defendants cite in support of their argument demonstrate the deficiencies in the special interrogatory given in the instant case. For instance, the special interrogatory tendered by the defendants in *Snyder v. Curran Township*, 281 Ill. App. 3d 56, 59 (1996), asked: " 'On the date of the accident and at the time and place of the accident in question in this case, was *the driving conduct of the plaintiff, Norma Snyder*, the sole proximate cause of the accident?' " (Emphasis added.) Similarly, the special interrogatories tendered by the defendant in *Santos v. Chicago Transit Authority*, 198 Ill. App. 3d 866, 868 (1990), asked: " 'Was there *contributory negligence on the part of the plaintiff* before and at the time of the occurrence which was the sole proximate cause of his injuries?' " and " 'Was there contributory negligence on the part of [the plaintiff] immediately before and at the time of his injuries? If your answer to the preceding question is "Yes", was *that negligence* the sole proximate cause of his injuries?' " (Emphases added.) Each of these special interrogatories identified the party whose conduct was challenged with specificity so that the jury could consider whether that party's conduct was the sole proximate cause of the plaintiff's injuries. In other words, there could be no confusion about whose conduct is being considered. By contrast, the special interrogatory given in the case at bar contains no such specificity, making it unclear whose conduct was at issue. Therefore, I agree with the trial court that the special interrogatory was not in the proper form and should not have been submitted to the jury.

¶ 140                              III. Prejudice or Jury Confusion

¶ 141    Having determined that the trial court properly found that the sole proximate cause jury instruction and the special interrogatory were improperly given, I must determine whether the trial court abused its discretion in finding that plaintiffs were prejudiced by these errors

such that a new trial is required. "A reviewing court will not find reversible error in the submission of a defective special interrogatory absent proof of prejudice to the complaining party or jury confusion." *Meister v. Henson*, 253 Ill. App. 3d 619, 629 (1993).

¶ 142    In the case at bar, the trial court found that plaintiffs were prejudiced by its errors, both individually and cumulatively, and I cannot find that the trial court abused its discretion in reaching this conclusion. In reviewing the trial court's determination, we must keep in mind our supreme court's instruction that "it is important to keep in mind that [t]he presiding judge in passing upon the motion for new trial has the benefit of his previous observation of the appearance of the witnesses, their manner in testifying, and of the circumstances aiding in the determination of credibility." (Internal quotation marks omitted.) *Maple*, 151 Ill. 2d at 456.

¶ 143    Defendants in the instant case made two alternative arguments: (1) that Theriot's conduct was the cause of plaintiff's injuries or, if the jury concluded that the track surface was at fault, (2) that it was Martin Collins, not defendants, that was the cause of the track's condition due to its failure to inform defendants about the appropriate maintenance procedures. Despite these two alternative arguments, the trial court instructed the jury that they should render a verdict in favor of defendants if "the sole proximate cause" of the plaintiff's injuries was "the conduct of some other person other than the defendant," without specifying who the "other person" was. Compounding this error, the jury was given a special interrogatory which asked whether "the conduct of some person other than the defendants" was "the sole proximate cause" of plaintiff's injuries. The jury instruction and special interrogatory thus focused the jury's attention on determining the "sole" proximate cause of plaintiff's injuries despite hearing evidence of two alternative proximate causes. The purpose of the sole proximate cause instruction is for a defendant "to defeat a plaintiff's claim of negligence by establishing proximate cause solely in the act of another not a party to the suit." *McDonnell*, 192 Ill. 2d at 516. "The sole proximate cause defense *** focuses the attention of a properly instructed jury *** on the plaintiff's duty to prove that the defendant's conduct was a proximate cause of plaintiff's injury." *Leonardi*, 168 Ill. 2d at 94. The instruction and special interrogatory in the instant case shifted the focus from that question and asked the jury to speculate as to whose conduct it was being asked to consider—Theriot's or Martin Collins's. By failing to properly inform the jury which nonparty's conduct was at issue, the trial court could have found that the instruction and special interrogatory confused the jury and distracted from the issues present in the case, namely, whether defendants' conduct was a proximate cause of plaintiff's injury. Accordingly, I cannot find that the trial court abused its discretion in finding that plaintiffs had been prejudiced by an instruction and special interrogatory that were inappropriate and confusing to the jury.

¶ 144    I am unpersuaded by defendants' arguments that plaintiffs were not prejudiced by the erroneous instruction and special interrogatory. First, defendants make much of the fact that they have been unable to discover any case in which the erroneous giving of a proximate cause jury instruction has resulted in reversible error. However, as plaintiffs point out, the instant case does not involve only an erroneous jury instruction but also involves an erroneous special interrogatory, which exacerbates the effect of the error in the instruction. Additionally, the case relied on by defendants, *Tabe v. Ausman*, 388 Ill. App. 3d 398 (2009), in support of their argument that the error was not reversible error, was a case in which proximate cause was not the main issue. The court there noted that "[p]roximate cause was

- 31 -

not central to the plaintiff's case or the defense put forth by the defendant doctors. This case turned on whether the MRI films showed nerve compression." *Tabe*, 388 Ill. App. 3d at 407. By contrast, in the instant case, proximate cause was central to the issues presented at trial. Even defendants' argument that they were not negligent had a proximate cause component—if the jury found that the track surface was faulty, defendants attempted to shift the blame to Martin Collins.

¶ 145        Finally, defendants attempt to find refuge in the "two-issue rule." "Under the two-issue rule, a general jury verdict will not be disturbed on review if the case involved two or more causes of action or defenses and there was sufficient evidence to support at least one of the issues or defenses presented to the jury free from error." *Robinson v. Boffa*, 402 Ill. App. 3d 401, 406 (2010). This is because, in the absence of a special interrogatory, the reviewing court cannot determine whether error on one of the issues affected the verdict. See *Strino v. Premier Healthcare Associates, P.C.*, 365 Ill. App. 3d 895, 904-05 (2006); *Tabe*, 388 Ill. App. 3d at 404; *Robinson*, 402 Ill. App. 3d at 406-07. In the case at bar, however, there was a special interrogatory, which the jury answered in the affirmative. Consequently, there is information in the record about the jury's thought processes and the two-issue rule would not apply.

¶ 146                                    CONCLUSION
¶ 147        For the reasons set forth above, I would affirm the trial court's grant of plaintiffs' motion for a new trial. I cannot find that the trial court abused its discretion in finding that it should not have given the sole proximate cause jury instruction and the special interrogatory and that these errors confused the jury and prejudiced plaintiff's right to a fair trial.