2019 IL App (1st) 180955

SIXTH DIVISION
JULY 26, 2019

No. 1-18-0955

| | | |
|---|---|---|
| JANE DOE, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 14 L 3610 |
| | ) | |
| ALEXIAN BROTHERS BEHAVIORAL HEALTH | ) | |
| HOSPITAL, | ) | Honorable |
| | ) | Mary R. Minella, |
| Defendant-Appellee. | ) | Judge Presiding. |

JUSTICE CUNNINGHAM delivered the judgment of the court, with opinion.
Presiding Justice Delort and Justice Connors concurred in the judgment and opinion.

**OPINION**

¶ 1    The plaintiff-appellant, by the pseudonym Jane Doe (the plaintiff), filed the instant action against the defendant-appellee, Alexian Brothers Behavioral Health Hospital (the hospital) in the circuit court of Cook County. The plaintiff's complaint sought damages for alleged emotional injuries she suffered after a former employee of the hospital mailed the plaintiff a harassing letter. Following a jury verdict in favor of the plaintiff, the trial court determined that the verdict was inconsistent with the jury's answer to a special interrogatory. The trial court then entered judgment in favor of the hospital on the basis that the special interrogatory was controlling. The plaintiff now appeals, arguing that the special interrogatory should never have been submitted to the jury. For the following reasons, we reverse the judgment of the circuit court of Cook County and remand the case for a new trial.

¶ 2                                          BACKGROUND

¶ 3     The hospital is a health care provider that operates an outpatient psychiatric clinic in Hoffman Estates, Illinois. The plaintiff received treatment from the hospital over the course of several years for her mental health issues, mainly related to sexual abuse that she suffered as a child.

¶ 4     Michelle Morrison,[1] the hospital's former employee who sent the letter in question to the plaintiff, was a senior account representative in the hospital's billing department from 2005 to 2010. Morrison worked directly with various insurance companies to resolve patient billing issues related to treatment received by patients of the hospital. Morrison's duties included requesting copies of patients' mental health records, as required by insurers, in order to provide the insurance companies with information needed regarding treatment rendered to their insureds. This information was used to obtain payment. On July 28, 2010, the hospital discovered that Morrison was using the hospital's computer system for personal Internet searches unrelated to her work. As a result of this, the hospital terminated her employment.

¶ 5     Four months after Morrison's termination, Chris Novak, who was then the hospital's practice administrator, received an anonymous letter containing only the word "liar." The word's individual letters had been cut from magazines and pasted onto stationery bearing the hospital's letterhead. Novak brought the letter to the attention of the hospital's risk manager, who recommended filing a police report, which Novak did.

¶ 6     Over the next year and a half, several of the hospital's patients received disturbing, anonymous letters, always on stationery bearing the hospital's letterhead. The letters referenced private information from the patients' mental health records retained by the hospital. The letters

_____

[1]Morrison is not a party to this appeal.

were of a vile and shocking personal nature.

¶ 7    The plaintiff was the fourth known patient to receive one of these anonymous, shocking letters. The letter sent to the plaintiff made disturbing references to the sexual abuse that she had suffered as a child, as well as to her mental health issues and treatments.

¶ 8    After each patient received an anonymous letter, they notified the hospital, which in turn notified the police. Eventually, the police determined that Morrison was the author of all the anonymous letters and arrested her. Morrison was eventually convicted of three counts of felony forgery. Morrison later testified via deposition regarding her activity while she was employed by the hospital. Among other things, she claimed to have taken 50 patient records home while she was employed by the hospital.

¶ 9    The plaintiff subsequently filed the complaint in the instant action. The plaintiff's complaint was originally filed against both the hospital and Morrison. However, the plaintiff dismissed Morrison as a party and filed an amended complaint against only the hospital. The amended complaint alleged five claims against the hospital: (1) institutional negligence, (2) willful and wanton institutional conduct, (3) negligent supervision, (4) negligent infliction of emotional distress, and (5) violation of the Mental Health and Developmental Disabilities Confidentiality Act (740 ILCS 110/1 *et seq.* (West 2014)). The plaintiff's complaint averred: "The outrageous content of [Morrison's letter] has severely and adversely impacted the health and well-being of [the plaintiff], directly and proximately causing her to suffer extreme emotional and psychological trauma, and severely aggravating her mental health conditions, requiring extensive further mental health treatment."

¶ 10    The hospital denied the material allegations of the plaintiff's complaint and pleaded sole proximate cause as an affirmative defense based on the "criminal conduct" of Morrison. The

hospital also filed a counter-claim for contribution against Morrison and sought apportionment of fault between itself and Morrison, pursuant to section 2-1117 of the Code of Civil Procedure (the Code) (735 ILCS 5/2-1117 (West 2014)), thus making Morrison a third-party defendant in the lawsuit.

¶ 11    A jury trial commenced. The plaintiff argued that the hospital allowed Morrison to request and obtain patient records that were more than the "minimum necessary" to complete her tasks related to billing, in accordance with the Health Insurance Portability and Accountability Act of 1996 (HIPAA) (Pub. L. No. 104-191, 110 Stat. 1936 (codified as amended in scattered sections of 29 U.S.C. and 42 U.S.C.)). See 45 C.F.R. § 164.502(b) (2014) ("[w]hen using or *** when requesting protected health information ***, a covered entity or business associate must make reasonable efforts to limit protected health information to the minimum necessary to accomplish the intended purpose of the use, disclosure, or request"). The plaintiff argued that the hospital failed to properly monitor the amount of records Morrison requested, failed to supervise her use of the records, and failed to properly train her.

¶ 12    The hospital's defense theory was that Morrison was the sole proximate cause of the plaintiff's injuries based on her rogue behavior and criminal conduct. The hospital presented several witnesses, including Morrison's former supervisor and the hospital's administrative expert, who all testified that Morrison completed the hospital's privacy and confidentiality training, completed 72 separate HIPAA continuing education modules during her employment, and signed the hospital's confidentiality statement.

¶ 13    Morrison initially testified[2] in her deposition that her supervisor allowed her to take some

---

[2]Morrison did not testify at the trial. Instead, the transcript from her deposition given earlier was read into the record at trial.

of the patients' medical records home in order to practice medical coding. Morrison later stated in her deposition that although her supervisor gave her permission to use the medical records to practice coding, she was not sure that her supervisor gave her specific permission to take the records home. Morrison's supervisor testified at trial that she never gave Morrison permission to take any medical records home.

¶ 14 During the jury instruction conference, the court asked the plaintiff's counsel whether the plaintiff was attributing Morrison's negligence to the hospital. Plaintiff's counsel responded: "We're alleging that it's really the hospital's failure to supervise, failure to train, and we're really not focusing on [Morrison's] actions." The plaintiff's counsel also agreed that it was unnecessary to instruct the jury on the theory of agency because "there's no allegation of agency."

¶ 15 The plaintiff tendered a modified version of Illinois Pattern Jury Instructions, Civil, No. 12.04 (2011) (hereinafter IPI Civil (2011) No. 12.04):

"More than one *party* may be to blame for causing an injury. If you

decide that the defendant was negligent and that its negligence was

a proximate cause of injury to the plaintiff; it is not a defense that

some third person who is not a party to the suit may also have been

to blame." (Emphasis in original.)[3]

The court noted that the "Notes on Use" section of IPI Civil (2011) No. 12.04 indicates that it should be used only where negligence of a person *who is not a party to the lawsuit* may have contributed to the cause of the occurrence. Because Morrison was a party to the lawsuit through the hospital's contribution claim, the court refused to give the modified IPI Civil (2011) No.

---

[3]The IPI Civil (2011) No. 12.04 instruction tendered by the plaintiff modified the word "person" to "party."

12.04 jury instruction.

¶ 16    The hospital then requested that the jury instructions include the hospital's contribution claim against Morrison. The plaintiff's counsel objected to characterizing Morrison's conduct as "criminal," in the contribution claim instructions tendered by the hospital. Once that language was removed, the plaintiff's counsel told the court that "otherwise that language in terms of theirs is fine."

¶ 17    The hospital also requested to have the following special interrogatory submitted to the jury: "Was Michelle Morrison the sole proximate cause of [the plaintiff's] claimed injuries?" The plaintiff objected to the special interrogatory on the basis that there was no evidence "that could sustain something being the sole proximate cause." The court allowed the special interrogatory over the plaintiff's objection.

¶ 18    The trial court provided the jury with instructions as to the plaintiff's claims against the hospital, as well as the hospital's contribution claim against Morrison. The instructions stated that the plaintiff alleged that numerous actions by the hospital were the "proximate cause" of her injuries. The instructions defined "proximate cause" as:

>    "[A] cause that, in the natural or ordinary course of events, produced the plaintiff's injury. It need not be the only cause, nor the last or nearest cause. It is sufficient if it combines with another cause resulting in the injury."

¶ 19    The jury received several verdict forms. It was instructed to fill out verdict form A if it found in favor of the plaintiff or verdict form B if it found in favor of the hospital. Verdict form A included a section for the jury to award damages, a section to indicate whether it found in favor of the hospital on its contribution claim against Morrison, and a section to apportion fault

between the hospital and Morrison. Verdict form C asked the jury to indicate whether it found that the hospital "acted with actual or deliberate intention to harm or, if not intentional, showed an utter indifference to or conscious disregard for the safety of the plaintiff." The jury was also given a separate, unlabeled form, which contained the special interrogatory: "Was Michelle Morrison's actions the sole proximate cause of [the plaintiff's] claimed injuries?"

¶ 20    During deliberations, the jury submitted a question to the trial court regarding the special interrogatory. The written question asked: "Do we need to fill out this form and is it part of verdict form C?" The trial court's written response stated: "You need to fill out the form attached. It is *not* a part of verdict form C."

¶ 21    The jury returned verdict form A in favor of the plaintiff. The jury awarded the plaintiff $1 million in damages for her emotional distress and loss of a normal life. The jury also answered "yes" and found in favor of the hospital on its contribution claim against Morrison. The jury apportioned fault between the hospital and Morrison, apportioning 20% of fault to the hospital and 80% of fault to Morrison. On verdict form C, the jury answered "no" in finding that the hospital had not acted with intention or indifference to harm the plaintiff. Lastly, the jury answered the hospital's special interrogatory in the affirmative. The jury found that Morrison was the sole proximate cause of the plaintiff's injuries.

¶ 22    The hospital argued that the jury's general verdict was inconsistent with the special interrogatory and moved the court to enter judgment in its favor. The court agreed that the general verdict and the special interrogatory were inconsistent. The court determined that the special interrogatory was controlling and consequently entered judgment in favor of the hospital on all counts.

¶ 23    The plaintiff filed a posttrial motion to set aside the special interrogatory, vacate the

judgment in favor of the hospital, and enter the jury verdict in favor of the plaintiff. The plaintiff argued that the special interrogatory should never have been given because the lawsuit was not about sole proximate cause. The plaintiff noted that when she tried to tender the jury instruction IPI Civil (2011) No. 12.04, which instructs on sole proximate cause, the trial court rejected that instruction. The trial court opined at the time that the instruction would have been improper since Morrison was a party to the lawsuit. The plaintiff argued that because it was improper to submit instruction IPI Civil (2011) No. 12.04 to the jury, it was, in turn, improper to submit a special interrogatory to the jury which asked about sole proximate cause. The plaintiff also argued that another reason why the special interrogatory should not have been given was because it confused the jury. The plaintiff argued that in the context of all the other jury instructions, including the instruction which defined "proximate cause," the special interrogatory was ambiguous and confusing. The plaintiff highlighted the jury's question regarding whether the special interrogatory was a part of verdict form C as evidence that the jury was confused. Additionally, the plaintiff claimed that the special interrogatory failed to indicate whether the jury found Morrison's actions to be within or outside the scope of her employment. The plaintiff averred that it was clear that the jury intended to find in her favor on her claims against the hospital because of its verdict on verdict form A. She asked the trial court to set aside the special interrogatory and enter judgment in her favor.

¶ 24    Following a hearing on the plaintiff's motion, the trial court entered an order denying the motion. In its written order, the trial court explained that the special interrogatory was proper because the hospital's defense theory was that Morrison was the sole proximate cause of the plaintiff's injuries. The trial court also found that there was no evidence of jury confusion. Regarding the jury's written question, the court stated:

"The question[ ] sought clarification or reflected a question about procedure rather than signifying confusion. *** Possibly and presumably, the jury's question *** was prompted by the fact that the special interrogatory, without a heading, was located directly after the jury instruction bearing 'Verdict Form C' in the stack of jury instructions given to the jurors."

The trial court also rejected the plaintiff's argument that the special interrogatory failed to determine whether Morrison's conduct was within or outside the scope of her employment. The trial court noted that the plaintiff had an opportunity to tender such a special interrogatory in order to prove its case, but failed to do so. The court concluded:

"Special interrogatories must go to the ultimate issue; they are not to be used as questionnaires to the jury to fill in gaps in plaintiff's proof. *** The special interrogatory in this case concerned an ultimate issue of fact, and tested the general verdict. It was clearly worded in proper form. The special interrogatory properly controlled the verdict."

This appeal followed.

¶ 25                                ANALYSIS

¶ 26    We note that we have jurisdiction to review this matter, as the plaintiff filed a timely notice of appeal following the denial of her posttrial motion. Ill. S. Ct. R. 301 (eff. Feb. 1, 1994); R. 303 (eff. July 1, 2017).

¶ 27    The plaintiff presents the following issues on appeal: (1) whether it was proper for the trial court to submit a special interrogatory on sole proximate cause to the jury, (2) whether the

trial court erred in finding that the special interrogatory was irreconcilable with the general verdict and entering judgment for the hospital, (3) whether the hospital was entitled to apportionment of fault, and (4) whether the trial court abused its discretion in not allowing the plaintiff to question prospective jurors about punitive damages during *voir dire*. Because the issue of whether the sole proximate cause special interrogatory should have been submitted to the jury is dispositive, we turn to it first.

¶ 28 The plaintiff argues that the sole proximate cause special interrogatory was not in proper form because it was ambiguous and confusing. The plaintiff focuses on the fact that the jury instructions lacked a definition of "sole proximate cause."[4] The plaintiff claims that the jury was clearly confused because it answered the special interrogatory in the affirmative, finding that Morrison was the sole proximate cause of the plaintiff's injuries, despite simultaneously finding in the general verdict that the hospital was 20% at fault for the plaintiff's injuries. As further evidence of confusion, the plaintiff also highlights the jury's question to the trial court during deliberations regarding the special interrogatory.

¶ 29 Special interrogatories are governed by section 2-1108 of the Code (735 ILCS 5/2-1108 (West 2016)), which states:

"Unless the nature of the case requires otherwise, the jury shall

---

[4]The hospital argues that the plaintiff has forfeited its challenge to the special interrogatory, specifically its argument that there should have been a "sole proximate cause" definition, because the plaintiff did not object to the special interrogatory on that basis until her posttrial motion. During oral arguments before this court, the plaintiff's counsel conceded that she never proposed a "sole proximate cause" definition but claimed that she timely objected to the special interrogatory on other grounds. Generally, arguments raised for the first time in a posttrial motion are forfeited. *Guski v. Raja*, 409 Ill. App. 3d 686, 697 (2011). However, forfeiture is a limitation on the parties, not the court, and we may exercise our discretion to review an otherwise forfeited issue. *Great American Insurance Co. of New York v. Heneghan Wrecking & Excavating Co.*, 2015 IL App (1st) 133376, ¶ 81 (Gordon, J., specially concurring). In the interest of justice, we exercise our discretion to consider the plaintiff's challenge to the special interrogatory, including her argument that it is confusing without a "sole proximate cause" definition.

render a general verdict. The jury may be required by the court, and must be required on request of any party, to find specially upon any material question or questions of fact submitted to the jury in writing. Special interrogatories shall be tendered, objected to, ruled upon and submitted to the jury as in the case of instructions. Submitting or refusing to submit a question of fact to the jury may be reviewed on appeal, as a ruling on a question of law. When the special finding of fact is inconsistent with the general verdict, the former controls the latter and the court may enter judgment accordingly."

A special interrogatory tests the general verdict against the jury's determination as to one or more specific issues of ultimate fact. *Simmons v. Garces*, 198 Ill. 2d 541, 555 (2002). A special interrogatory is in proper form if (1) it relates to an ultimate issue of fact upon which the rights of the parties depend and (2) an answer responsive thereto is inconsistent with some general verdict that might be returned. *Id.* Additionally, "a special interrogatory: (1) should consist of a single direct question; (2) should not be prejudicial, repetitive, misleading, confusing or ambiguous; and (3) should use the same language or terms as the tendered instructions." *Smart v. City of Chicago*, 2013 IL App (1st) 120901, ¶ 32. We review a trial court's ruling regarding a request for a special interrogatory *de novo*. *Id.*

¶ 30    There is no question that the jury's responses to the general verdict and the special interrogatory in this case were inconsistent. We acknowledge that a conflict between the general verdict and the special interrogatory does not necessarily mean that the special interrogatory was confusing. See *Blakey v. Gilbane Building Corp.*, 303 Ill. App. 3d 872, 882 (1999) (the mere fact

of inconsistency between the general verdict and the special interrogatory does not indicate that the jury was confused in entering the special interrogatory; to so hold would patently nullify the pertinent provision of section 2-1108). However, in the context of *all of the jury instructions* in this case, the special interrogatory was indeed confusing and ambiguous.

¶ 31    First, the jury was asked whether it found in favor of the plaintiff on her claims against the hospital, which it did. Next, the jury was asked whether it found in favor of the hospital on its contribution claim against Morrison, which it also did. Then, it was asked to apportion fault for the plaintiff's injuries between the hospital and Morrison, which it apportioned the hospital 20% of fault and Morrison 80% of fault. *Then* it was asked if Morrison was the "sole proximate cause" of the plaintiff's injuries, to which it answered yes. All of these instructions together produced a result that suggests confusion. We disagree with the trial court that the jury's written question regarding the special interrogatory was of a procedural nature. It is much more likely that the jury was seeking clarification because it was confused by the sole proximate cause special interrogatory after just apportioning fault between the hospital and Morrison.

¶ 32    In *Jacobs v. Yellow Cab Affiliation, Inc.*, 2017 IL App (1st) 151107, a taxi passenger filed a negligence action against a taxi driver and the respective taxi company after he suffered injuries in an automobile accident. The taxi driver and taxi company submitted the following special interrogatory: " 'Were [the plaintiff's] actions on the night of the accident the sole proximate cause of plaintiff's injuries and damages?' " *Id.* ¶ 127. The trial court rejected the special interrogatory, and this court affirmed that ruling on appeal. *Id.* This court explained:

> "[T]he language was so broad that a responsive answer would not
>
> necessarily be inconsistent with a general verdict. It is not clear
>
> what part of the verdict is being tested because the question does

> not specify any particular 'actions on the night of the accident.' It
> could refer to [the plaintiff's] action of selecting [the taxi driver's]
> cab, giving directions, using his phone during the ride, or yelling
> out to exit the highway." *Id.*

Similarly here, it is not clear what part of the verdict is being tested by the special interrogatory. The special interrogatory, "Was Michelle Morrison the sole proximate cause of [the plaintiff's] claimed injuries?" could refer to more than one act or set of facts relating to Morrison. For example, it could relate to Morrison's act of sending the letter, or it could relate to Morrison's acts of bringing the plaintiff's mental health record home with her and using it to send the letter. Stated another way, the jury could have found that although Morrison's actions were the sole proximate cause of the plaintiff's injuries, some of her actions would not have occurred *but for the hospital's negligence*. This is especially true without clear jury instructions. As in *Jacobs*, the special interrogatory in this case was broad in the context of all the other instructions, and thus it is impossible to determine what the jury understood to be the meaning of "sole proximate cause."

¶ 33   Indeed, there was no definition of "sole proximate cause." And despite the hospital's argument to the contrary, "sole proximate cause" is not a term that is broadly used in every day speech, such that it is a commonly understood term. Nevertheless, in support of its argument, the hospital directs us to *Douglas v. Arlington Park Racecourse, LLC*, 2018 IL App (1st) 162962, but we find that *Douglas* highlights that "sole proximate cause" is not well understood even in the legal community. In *Douglas*, the majority debated the term "sole proximate cause," and ultimately held that it is proper to give a sole proximate cause instruction where there are multiple potential causes of a plaintiff's injury. *Id.* ¶ 58. In *Douglas*, this court stated that "the

word 'sole' does not necessarily imply only the singular." *Id.* ¶ 57. However, the dissent, which we find more persuasive and clear, stated:

> "Examining the plain language of this instruction, I must agree with the trial court that the sole proximate cause language is inappropriate where there is evidence of multiple—independent— potential causes of the plaintiff's injuries by multiple parties. The sole proximate cause instruction contemplates just that—the 'sole' proximate cause of the plaintiff's injury. 'Sole' is defined as '[o]ne and only' or '[b]elonging or restricted to one person or group of people.' Oxford English Dictionary, http:// en.oxforddictionaries.com/definition/sole (last visited June 18, 2018). The majority attempts to torture the definition of this word to suggest that 'the word "sole" does not necessarily imply only the singular.' [Citation.] It does so by pointing to dictionary definitions that include the term 'group.' The definition I have quoted above also includes the term 'group.' But the majority's strained argument completely glosses over the important part of the definition—'*one* person or group of people.' (Emphasis added.) Oxford English Dictionary, http://en.oxforddictionaries.com/ definition/sole (last visited June 18, 2018). Each of the majority's quoted definitions also includes this same limitation. Even though a group may be made of a number of individuals, it is still a collective singular, and the majority's attempt to contort this

meaning to encompass multiple distinct parties is simply absurd."

*Id.* ¶ 127 (Gordon, J., dissenting).

Like the dissent in *Douglas*, we also find that "sole proximate cause" cannot apply to more than one party. The take away, however, is that it is impossible to determine whether the jury in this case believed that "sole proximate cause" applied only to Morrison's actions or to Morrison's actions and the hospital's actions together. As highlighted by the debate in *Douglas*, without a clear definition, "sole proximate cause" can be a confusing term to a jury. We find that to be the case here.

¶ 34    When the plaintiff attempted to tender IPI Civil (2011) No. 12.04 during the jury instructions conference, the trial court properly rejected it. IPI Civil (2011) No. 12.04 normally instructs a jury on sole proximate cause.[5] The "Notes on Use" section of IPI Civil (2011) No. 12.04 makes clear, however, that those instructions are not to be used when they are directed at a party in the subject case. Morrison was a party in this case, having been brought in by the hospital on its contribution claim. Nonetheless, the hospital's defense theory at trial was that Morrison was the sole proximate cause of the plaintiff's injuries. When a defendant presents a sole proximate cause defense, it necessarily follows that there will be a sole proximate cause instruction. See *Leonardi v. Loyola University of Chicago*, 168 Ill. 2d 83, 101 (1995) (a defendant has the right to establish, by competent evidence, that the conduct of a third person is the sole proximate cause of plaintiff's injuries, and the defendant is entitled to an instruction on this theory). As discussed, the "sole proximate cause" instruction would have been improper here due to Morrison's status as a party in the case. In turn, then, it was improper to submit the sole

---

[5]We note that the plaintiff's tendered version of IPI Civil (2011) No. 12.04 was modified and actually did not include the "sole proximate cause" instruction.

proximate cause special interrogatory to the jury since there could be no accompanying instruction on sole proximate cause in light of Morrison's status as a party to the lawsuit.

¶ 35    Moreover, the jury instructions included a definition of "proximate cause," which stated:

>    "[A] cause that, in the natural or ordinary course of events, produced the plaintiff's injury. It need not be the *only* cause, nor the *last or nearest* cause. It is sufficient if it *combines with another cause* resulting in the injury." (Emphases added.)

This definition specifically allows for *more than one cause* of the plaintiff's injuries. It is well established that special interrogatories should use the same language contained in the other jury instructions. *Thomas v. Johnson Controls, Inc.*, 344 Ill. App. 3d 1026, 1033 (2003). Without clear instructions, it is uncertain whether the jury in this case considered the "proximate cause" definition in its deliberation of the "sole proximate cause" special interrogatory. Accordingly, we find that the definition of "proximate cause" provided by the trial court, when combined with the lack of a definition for "sole proximate cause," rendered the special interrogatory confusing. See *Abruzzo v. City of Park Ridge*, 2013 IL App (1st) 122360, ¶ 67 (special interrogatories are to be read in the context of the parties' claims and of the court's other instructions to determine how the interrogatories might be interpreted by the jury and whether the jury might be confused).

¶ 36    Reading the sole proximate cause special interrogatory in the context of all the other jury instructions in this case, it undoubtedly has a confusing effect. It was therefore not in proper form and should not have been submitted to the jury. Thus, we reverse the judgment of the trial court, and we remand this case for a new trial.

¶ 37    In light of this, we need not reach the remaining issues raised by the parties. This includes the plaintiff's argument that the trial court abused its discretion during *voir dire* by not allowing

her to question prospective jurors about punitive damages. While the plaintiff's proposed questions for the prospective jurors may have been allowable, the jury ultimately found that the hospital did not act with willful or wanton conduct towards the plaintiff. Thus, any purported error on this issue during *voir dire* was harmless, as the plaintiff was not entitled to recover punitive damages at the conclusion of the case.

¶ 38                                        CONCLUSION

¶ 39     For the foregoing reasons, we reverse the judgment of the circuit court of Cook County and remand this case for a new trial consistent with this opinion.

¶ 40     Reversed and remanded.

---

**No. 1-18-0955**

---

| | |
|---|---|
| **Cite as:** | *Doe v. Alexian Brothers Behavioral Health Hospital*, 2019 IL App (1st) 180955 |

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 14-L-3610; the Hon. Mary R. Minella, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | Amanda M. Martin and Izabela Poznanski, of Law Offices of Parente & Norem, P.C., of Chicago, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Joshua G. Vincent, Matthew P. Walsh II, James M. Hofert, Carson R. Griffis, and Lari A. Dierks, of Hinshaw & Culbertson LLP, of Chicago, for appellee. |

---